607 So.2d 769 (1992)
Ronald S. STRICKLAND
v.
STATE FARM INSURANCE COMPANIES.
No. CA 91 1189.
Court of Appeal of Louisiana, First Circuit.
October 16, 1992.
*770 Daniel G. Foil, Covington, for plaintiff-appellant.
Burt K. Carnahan, Metairie, for defendant-appellee.
Before CARTER, LANIER and LeBLANC, JJ.
LANIER, Judge.
This action is a suit against an uninsured motorist insurer to collect for injuries suffered when plaintiff's motorcycle struck an automobile. After a jury trial, the jury found as a fact that the plaintiff was not "living with" his parents and the trial judge held as a matter of law that plaintiff, Ronald Strickland (Strickland), was not covered under the insurance policy issued by the defendant, State Farm Mutual Automobile Insurance Company (State Farm), to plaintiff's father, Alonzo Strickland. The trial court denied Strickland's motion for judgment notwithstanding the verdict and, in the alternative, motion for a new trial. Strickland took this devolutive appeal. We affirm.

FACTS
On May 26, 1988, at the intersection of Louisiana Highway 21 and Lowe Davis Road in St. Tammany Parish, Louisiana, a 1981 Yamaha motorcycle owned and operated by Ronald Strickland collided with an automobile driven by Lottie O. Crutchfield. Strickland was thrown from his motorcycle and suffered injuries to his right thigh, right knee and right foot. Strickland settled with Crutchfield and her insurer, Allstate Insurance Company, for the policy limits ($10,000). Strickland then attempted to collect under the uninsured/underinsured coverage of an automobile liability insurance policy issued to his father, Alonzo Strickland, by State Farm.[1]
The automobile policy issued by State Farm to Alonzo Strickland contained the following language about the uninsured motorist coverage:
Who Is an Insured

Insuredmeans the person or persons covered by uninsured motor vehicle coverage.
This is:
1. the first person named in the declarations;
2. his or her spouse;

3. their relatives; and
4. any other person while occupying:

a. your car, a temporary substitute car, a newly acquired car or a trailer attached to such car. Such vehicle has to be used within the scope of the consent of you or your spouse; or
b. a car not owned by you, your spouse or any relative, or a trailer attached to such a car. It has to be driven by the first person named in the declarations or that person's spouse and within the scope of the owner's consent.
Such other person occupying a vehicle used to carry persons for a charge is not an insured.

5. any person entitled to recover damages because of bodily injury to an insured under 1 through 4 above.
*771 (Italicization and bolding in original)
The definitions section of that policy defines "relative" as follows:
Relativemeans a person related to you or your spouse by blood, marriage or adoption who lives with you. It includes your unmarried and unemancipated child away at school.
(Italicization and bolding in original; emphasis added)
Strickland, who was thirty years old and working as an assistant manager at the Pizza Hut restaurant in Bogalusa, Louisiana, testified he was living with his parents at their home in Covington, Louisiana, at the time of the accident.[2] He testified that in the two years prior to taking the job at Pizza Hut, he had worked at the Holiday Inn in Covington and lived with his parents. Upon taking the job with Pizza Hut in 1986, he moved to Bogalusa at the request of his employer. After living in two rented houses for several months, he moved back in with his parents in Covington in the summer of 1987. Strickland testified he began commuting to work on his motorcycle.[3]
In November or December of 1987, he began spending some nights at the La Florida Inn in Bogalusa. In response to the question of why he rented this room, Strickland testified as follows:
Because there was times where it would be raining or cold or either I would have to close the restaurant at twelve or one o'clock and then turn around and open up the restaurant at eight o'clock in the morning.
Initially, Strickland paid $20 dollars per night for a room. In January of 1988, the owner of the motel offered Strickland a $35 weekly rate. Strickland testified the arrangement was to pay two weeks rent upon receiving his bi-weekly paycheck. He testified he spent one or two nights a week at his parents' house and some nights at his girlfriend's home in McComb, Mississippi. The night before the accident he had stayed at the motel. Strickland testified he had a key to his parents' house. He kept some of his clothes, some tools and two broken down cars at his parents' house. He kept several pieces of furniture at a storage facility in Mandeville, Louisiana. He testified he only kept work uniforms, a couple of changes of clothes, some bathroom supplies and a couple of pairs of shoes at the motel in Bogalusa. At the time of the accident, Strickland was receiving his mail and was registered to vote at his parents' address in Covington. He testified he had no bank accounts at the time of the accident.
On cross examination, Strickland admitted that he had spent only one or two nights at his parents' house in the four weeks before the accident. He also admitted making the following statement to a representative of Allstate Insurance on June 1, 1988:
Q. Alright. What is your address Ron?
A. Ah I don't know the name of the street I live on because I live in a hotel up in Bogalusa.
Q. Which hotel is it?
A. La Florida Inn.
After leaving the hospital, Strickland spent a week at a friend's home in McComb, a week at his parents' home, a week at a friend's home in Biloxi, Mississippi, and a week in Detroit before renting a house in McComb.
Louisiana State Trooper Peter Salamankus testified he interviewed Strickland in the hospital after the accident. At that time Strickland, gave a Bogalusa address as his home address.[4]
On the factual issue of whether Strickland was living with his parents at the time of the accident, the trial judge instructed *772 the jury, in pertinent part, as follows:[5]
In making this determination, you must consider all factual circumstances which indicate whether the plaintiff intended to live with his parents, such as, one, where the plaintiff spent his time; where the plaintiff kept most of his clothing or other personal belongings; where the plaintiff received his mail, including Federal and State tax forms; motor vehicle insurance premiums notices; mail from friends; where the plaintiff had personal accounts, such as bank accounts or charge accounts; and whether or not the plaintiff had his own room in his parents' house. This list is not exclusive. It is purely for the sake of example.
The trial jury found that Strickland was not living with his parents at the time of the accident, and judgment was rendered in favor of State Farm and against Strickland.

VALIDITY OF THE JURY'S FACTUAL FINDING
In his only assignment of error, Strickland alleges the trial court erred in finding that he was not "an insured" under his father's insurance policy issued by State Farm.

Interpretation of Policy Language
Strickland asserts "Louisiana laws on contractual interpretation support an interpretation of this insurance contract in favor of coverage." The rules for interpreting a contract are found in La.C.C. art. 2045 et seq. The general rules for interpreting contracts of insurance are set forth in Pareti v. Sentry Indemnity Company, 536 So.2d 417, 420 (La.1988), as follows:
There are certain elementary legal principles which apply to the interpretation of insurance policies. An insurance policy is a contract and, as with all other contracts, it constitutes the law between the parties.... If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written....
An insurance contract is to be construed as a whole, and one portion thereof should not be construed separately at the expense of disregarding another.... If there is an ambiguity in a policy, then that ambiguity should be construed in favor of the insured and against the insurer.... However, courts have no authority to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language. [Citations omitted.]
See also, Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991). Further, courts should not strain to find an ambiguity where none exists. Cell-O-Mar, Inc. v. Gros, 479 So.2d 386 (La.App. 1st Cir.1985), writs denied, 481 So.2d 1332, 1333 (La. 1986). Whether a contract is ambiguous or not is a question of law. Borden, Inc. v. Gulf State Utilities Company, 543 So.2d 924 (La.App. 1st Cir.), writ denied, 545 So.2d 1041 (La.1989); Aycock v. Allied Enterprises, Inc., 517 So.2d 303 (La.App. 1st Cir.1987), writs denied, 518 So.2d 512, 513 (La.1988).
We have found no published cases interpreting the phrase "who lives with you" found in this policy. Generally, a relative, for purposes of insurance coverage, is defined as a resident of the same household as the named insured. See W. McKenzie and H. Johnson, 15 Louisiana Civil Law Treatise, Insurance Law and Practice, §§ 43-49, 107, pp. 114-125, 228 (1986). We conclude, as a matter of law, that the phrase "who lives with you" is not ambiguous and should be given its generally prevailing meaning. La.C.C. art. 2047.

Jury's Factual Finding
The Louisiana Supreme Court in Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989) stated the following regarding appellate review of factual findings of a trial court:
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly *773 wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.... The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.... In applying the manifestly erroneousclearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo....
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.... Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.... But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong....
(Footnotes omitted; citations omitted)
The jury obviously gave much weight to the statements Strickland made to the Allstate representative and the police officer shortly after the accident. Also, Strickland only spent one or two days of the month prior to the accident and a week after the accident at his parents' home before moving to McComb. The jury apparently did not accept Strickland's testimony that he was "living with" his parents. A thorough review of the record leads to the conclusion that the jury was not clearly wrong in finding as a fact that Strickland was not "living with" his parents at the time of the accident.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court in favor of State Farm and against Strickland is affirmed. Strickland is cast for the cost of this appeal.
AFFIRMED.
CARTER, J., dissents with reasons.
CARTER, Judge, dissenting.
I respectfully disagree with the majority opinion.
The term "lives with" is just as imprecise (and maybe even more imprecise) than the term "residing with." "Live" is defined in the New Collegiate Edition of the American Heritage Dictionary of the English Language as "to reside." Therefore, I submit that Justice Dennis's majority opinion on rehearing in Bond v. Commercial Union Assurance Co., 407 So.2d 401, 407-08 (La.1981) is controlling.
Moreover, recently this court in Miley v. Louisiana Farm Bureau Casualty Insurance Company, 599 So.2d 791, 797-99 (La. App. 1st Cir.), writ denied, 604 So.2d 1313 (La.1992), interpreted the policy language, which defined resident as "the physical presence in your household with the intention to continue living there." We noted the following:
The controlling test of whether persons are residents of the same household at a particular time ... is not solely *774 whether they are then residing together under one roof. The real test is whether the absence of the party of interest from the household of the alleged insured is intended to be permanent or only temporaryi.e., whether there is physical absence coupled with the intent not to return. Bearden v. Rucker, 437 So.2d 1116, 1121 (La.1983).
Whether a person is or is not a resident of a household is a question of law as well as a question of fact that is to be determined from the facts of each case. The question is largely one of intention. The intention of a person to be a resident of a particular place is determined by his expressions at times not suspicious, and his testimony, when called on, considered in light of his conduct and circumstances of life. Andrade v. Shiers, 516 So.2d 1192, 1194 (La.App. 2nd Cir.1987). Moreover, whether a living arrangement renders persons "residents of the same household" is not solely dependent upon whether they are living under the same roof. The emphasis is on whether the person can be found to have "membership in a group rather than an attachment to a building." Residency is, in this respect, "a matter of intention and choice" rather than a matter of location. Bearden v. Rucker, 437 So.2d at 1121; Andrade v. Shiers, 516 So.2d at 1194.
The term "household" embraces a collection of persons as a single group living together under one roof. It is a "collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness." Brown v. Trahan, 526 So.2d 1216, 1219 (La.App. 3rd Cir.1988).
In Miley v. Louisiana Farm Bureau Casualty Insurance Company, 599 So.2d at 799, this court discussed the various facts and legal principles and determined that:
[A]t the time of the accident, Cindee Parker Wheat was not a resident of the household of her husband, Murphy Keith Wheat. Cindee Parker Wheat had not been a member of the Wheat household for a continuous period of four to six months. She had few, if any, personal belongings at the Wheat house, had no key to the house, and was not free to come and go from there as she pleased. She was certainly not a member of a group living together under one roof. Nor can it be said that Cindee and her husband subsisted in common and directed their attention to a common object, the promotion of their mutual interests and social happiness. Most importantly, it was the obvious intention and choice of Cindee Parker Wheat not to return to the home of her husband. Cindee Parker Wheat chose to begin a new life and reside in the home of her mother where she could pursue the lifestyle she wanted.
In the instant case, it is clear that despite his age, Ronald Strickland still lived with his parents. Although he physically stayed in many locations, the record does not support the finding that he did not live with his parents.
The majority opinion notes that between 1984 and 1986, Ronald Strickland worked in Covington and lived with his parents in their home. When he accepted a position in Bogalusa in 1986, he moved from his parents home and lived in a couple of rented homes. Thereafter, during the summer of 1987, he returned to live with his parents and commuted to work. Although in late 1987 and early 1988, Strickland rented a motel room by the week. Strickland was not assigned a designated motel room, but was given different rooms, depending on availability. Also, Strickland's reason for renting the motel room by the week as opposed to paying a nightly rate was because it was less expensive. Moreover, despite the fact that he had a motel room, Strickland spent his free time at his parents' home or at his girlfriend's home in Mississippi.
Although he did not live "exclusively" with his parents, Ronald Strickland clearly lived with his parents. Strickland maintained a key to his parents home where he had a room for himself. He kept his clothing, some tools, and two old cars at his *775 parents' home. He received his mail and was registered to vote at his parents' home. The motel room appeared to be a place where he rested only briefly in that he only kept work uniforms, a couple of changes of clothes, and some toiletries there.
For these reasons, I respectfully dissent from the majority opinion.
NOTES
[1] This action was filed against State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, who issued a personal liability umbrella policy to Alonzo Strickland.
[2] Strickland's mother and father also testified that he was living with them at the time of the accident.
[3] He testified his parents' home was about thirty miles from his job.
[4] Strickland testified that he was on medication at the time he made this statement and the address given was that of the Pizza Hut.
[5] Strickland did not object to this jury instruction.