674 So.2d 1117 (1996)
Peggy MOBLEY, Individually and as the Natural Tutrix of Courtney Mobley, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.
No. 28357-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1996.
M. Daniel LaGrone, Jr., Kent Gill, Shreveport, for Appellant.
Hicks & Hubley by Michael S. Hubley, Shreveport, for Appellee.
Before SEXTON, WILLIAMS and GASKINS, JJ.
SEXTON, Judge.
This appeal arises from a judgment dismissing the plaintiff's claim for uninsured/underinsured motorist coverage ("UM") and umbrella coverage against the defendants, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty *1118 Company (hereinafter collectively "State Farm"). The question presented is whether, at the time of the accident, the plaintiff's daughter, Courtney Mobley, was "living with" her father, Mr. Charles Mobley, who was legally separated from the child's mother, but still owned his share of the community property home with the mother, Peggy Mobley.
Courtney Mobley was injured on February 11, 1991 on the DeSoto High School parking lot. On that day, Courtney rode to school with her friend, Kim Baker, in a vehicle driven by Pansey Baker, Kim's mother. After Courtney alighted from the vehicle, she reached back into the vehicle to get her books and belongings when the vehicle started moving. Courtney was knocked down, and the vehicle rolled over her heel, causing injuries. She was 13 years old at the time.
The Bakers were underinsured. Peggy Mobley, individually and as tutrix for Courtney, sought recovery under her own UM policy issued by State Farm and under a separate UM policy held by her husband, Charles Mobley, also issued by State Farm, but through a different agent. The latter Mobley also had a one million dollar umbrella policy issued by State Farm Fire and Casualty in effect at the time of the accident.
The UM policies in question provide coverage for relatives of the named insured, which, in this instance, is Charles Mobley. The policy defines a "relative," in pertinent part, as a "person related to you" ... "by blood or adoption" ... "who lives with you." State Farm denied coverage and moved for summary judgment dismissing the plaintiff's claim under Mr. Mobley's policy on grounds that Courtney was not an insured under the policy because she lived with her mother as a result of a legal separation between Charles and Peggy Mobley some nine years earlier. The plaintiff also filed a motion for summary judgment seeking a ruling that the policy issued to Charles Mobley by State Farm provided UM coverage to Courtney. The district court denied both motions.
A bifurcated trial on the issue of coverage was held on April 7, 1995, wherein testimony was heard from Courtney Mobley, Charles Mobley, Peggy Mobley, Dr. Saxon Bear, a clinical psychologist who interviewed both Courtney and her mother in conjunction with a pain management program, and Tommy Seabaugh, a resident claims superintendent for State Farm. Various other documents, including the policies in question, were submitted into evidence. The court issued an opinion on June 30, 1995, finding that Courtney did not live with her father, and therefore, it denied coverage under the UM policy issued to Charles Mobley. A judgment dismissing the defendants was signed on August 3, 1995.
Plaintiff appeals, alleging three assignments of error:
1. The trial court erred in failing to find that Courtney Mobley was covered under the uninsured motorist provisions of the primary and umbrella policies issued to her father, Charles D. Mobley.
2. The trial court erred in its ruling of March 16, 1995 denying plaintiff's motion to compel discovery of information and documentation relative to the defendant's intent and purpose for changing language in [the] automobile policy.
3. The trial court erred in its ruling of July 18, 1994 denying plaintiffs' motion for summary judgment declaring coverage under the uninsured motorist provisions of the primary and umbrella policies issued to her father, Charles D. Mobley.
Considering appellant's final assignment of error first, we note at the outset that no appeal lies from the denial of a motion for summary judgment. LSA-C.C.P. art. 968. Comment (d) to LSA-C.C.P. art. 968 states that because a trial court's overruling a motion for summary judgment is an interlocutory judgment causing no irreparable injury, it can only be appealed with the final judgment in the case. Leonard v. Stephens, 588 So.2d 1300 (La.App. 2d Cir.1991). (Citations omitted.) For the reasons stated herein, we hold that the trial court correctly determined that the question of whether Courtney Mobley lived with her father is an issue of fact precluding summary judgment. LSA-C.C.P. art. 966.
Turning now to the central question in this appeal, plaintiff contends that the trial *1119 court erred in failing to find that Courtney Mobley was covered under the uninsured motorist provisions of the primary and umbrella policies issued to her father. The key inquiry is the interpretation to be given to the policy definition of a "relative" as an insured under the UM coverage provisions. The policy defines a relative (and spouse) as follows:

Relativemeans a person related to you or your spouse by blood, marriage or adoption who lives with you. It includes your unmarried and unemancipated child away at school.

Spousemeans your husband or wife while living with you.

The policy language quoted above reflects a change in the definition of a "relative," which has generally been defined in prior policies as a "resident of the same household." Plaintiff contends that there is no difference between the quoted policy definition of a "relative" above and the earlier policy definitions. Thus, plaintiff argues, prior jurisprudence interpreting the latter definition should apply. The linchpin to plaintiff's argument is the case of Bearden v. Rucker, 437 So.2d 1116 (La.1983).
In Bearden, a married woman legally separated from her husband for nine months was injured in an automobile accident as a guest passenger of a non-owned auto. The question presented was whether a "Family Combination Automobile Policy" issued in the name of Mrs. Bearden's husband on a community owned vehicle in Mrs. Bearden's exclusive custody for her use provided her with UM coverage. Under the terms of the policy, coverage would be afforded if it was determined that Mrs. Bearden was, at the time of the accident, "a resident of the same household" as her husband. We also note that the policy in question was a single policy covering both the husband's and wife's vehicle originally obtained prior to their separation and renewed before legal separation occurred.
The trial and appellate court judgments denied coverage, finding that Mrs. Bearden did not reside with her husband. The supreme court reversed, however, after finding that the phrase, "resident of the same household," was ambiguous because the word "resident" had no fixed meaning. Construing the ambiguity in the policy in favor of coverage, the court noted that the emphasis is upon "whether there remains `membership in a group rather than attachment to a building' and it is `a matter of intention and choice' rather than one of location." Bearden, supra at 1121, citing Southern Farm Bureau Casualty Insurance Co. v. Kimball, 552 S.W.2d 207 (Tex.Civ.App.1977).
As of the time of this opinion, the only published Louisiana case interpreting the phrase "who lives with you" found in this policy is Strickland v. State Farm Insurance Companies, 607 So.2d 769 (La.App. 1st Cir. 1992). In Strickland, the appellate court affirmed a jury verdict that found that the plaintiff was not living with his parents at the time of the accident, thereby dismissing his claim for coverage under his father's UM policy. In reviewing the lower court's judgment, the first circuit held that, "as a matter of law," [] the phrase `who lives with you' is not ambiguous and should be given its generally prevailing meaning. La.C.C. art. 2047." Strickland, supra at 772.
The instant case thus hinges on an interpretation of the phrase, "who lives with you," in the State Farm policy. In our task, we are guided by the recent statement of Louisiana Supreme Court in Louisiana Insurance Guar. Assoc. v. Interstate Fire & Casualty Co., 93-C-0911 (La. 1/14/94) 630 So.2d 759, wherein the Court enunciated several elementary principles regarding construction of insurance policies:
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993); Central Louisiana Electric Co. v. Westinghouse Elec. Corp., 579 So.2d 981, 985 (La.1991). The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. LSA-C.C. Art. 2045 (defining contractual interpretation as "the determination of the common intent of the parties"); Garcia v. St. Bernard Parish School Bd., 576 So.2d 975, 976 (La.1991) (citing W. McKenzie & *1120 H. Johnson, 15 Civil Law Treatise, Insurance Law and Practice § 4 (1986) ("Civil Law Treatise")).
The parties' intent as reflected by the words in the policy determine the extent of coverage. Trinity Industries, Inc. v. Ins. Co. of North America, 916 F.2d 267, 269 (5th Cir.1990) (citing Pareti v. Sentry Indemnity Co., 536 So.2d 417 (La.1988)). Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. LSA-C.C. Art. 2047; (FN7) Breland v. Schilling, 550 So.2d 609, 610 (La.1989); Capital Bank & Trust Co. v. Equitable Life Assur. Society of United States, 542 So.2d 494, 497 (La.1989).
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Lindsey v. Poole, 579 So.2d 1145, 1147 (La.App. [93-0911 La. 6] 2d Cir.), writ denied, 588 So.2d 100 (La.1991) (citing Zurich Ins. Co. v. Bouler, 198 So.2d 129 (La.App. 1st Cir.1967)); Harvey v. Mr. Lynn's, Inc., 416 So.2d 960, 962 (La.App. 2d Cir.1982) (collecting cases); Jefferson v. Monumental General Ins. Co., 577 So.2d 1184, 1187 (La.App. 2d Cir.1991). Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. Oceanonics, Inc. v. Petroleum Distributing Co., 292 So.2d 190, 192 (La.1974); Fruge v. First Continental Life and Accident Ins. Co., 430 So.2d 1072, 1077 (La.App. 4th Cir.), writ denied, 438 So.2d 573 (La.1983) (collecting cases); Hartford Acc. & Indem. Co. v. Joe Dean Contractors, Inc., 584 So.2d 1226, 1229 (La.App. 2d Cir.1991) (collecting cases).
Ambiguity in an insurance policy must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions. LSA-C.C. Art. 2050; (FN8) Pareti v. Sentry Indemnity Co., 536 So.2d 417, 420 (La. 1988); Benton Casing Service, Inc. v. Avemco Ins. Co., 379 So.2d 225, 231 (La. 1979) ("one section or its placement is not to be construed separately and at the expense of disregarding other sections or placements"); Hartford, 584 So.2d at 1229 ("[n]o single portion of an insurance contract should be construed independent of the whole, i.e., the policy is to be construed in its entirety").
If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured. This rule of strict construction requires that ambiguous policy provisions be construed against the insurer who issued the policy and in favor of coverage to the insured. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993) (citing Breland, supra). Under this rule, "[e]quivocal provisions seeking to narrow the insurer's obligation are strictly construed against the insurer, since these are prepared by the insurer and the insured had no voice in the preparation." Garcia v. St. Bernard Parish School Bd., 576 So.2d 975, 976 (La. 1991). LSA-C.C. Art. 2056 codifies this rule of strict construction, providing that "[i]n case of doubt that cannot be otherwise resolved, a provision in a contract [93-0911 La. 7] must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." LSA-C.C. Art. 2056; Civil Law Treatise, supra § 4; see also W. Freedman, 2 Richards on the Law of Insurance § 11:2[f] (6th Ed.1990) ("Richards") (noting that the rule of strict construction is also labeled the doctrine of contra proferentum).
"Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." Breland v. Schilling, 550 So.2d 609, 610-11 (La.1989). The court should construe the policy "to fulfill the reasonable expectations of the parties in the light *1121 of the customs and usages of the industry." Trinity Industries, 916 F.2d at 269 (5th Cir.1990) (citing Benton, 379 So.2d at 231 and LSA-C.C. Arts. 2045, 2050, 2053 and 2054). In insurance parlance, this is labeled the reasonable expectations doctrine. Richards, supra at § 11:2[g].(FN9)
Yet, if the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. LSA-C.C. Art. 2046 (providing that when the words of a contract are clear, no further interpretation may be made to determine the parties' intent); Schroeder v. Bd. of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991); Massachusetts Mutual Life Ins. Co. v. Nails, 549 So.2d 826, 832 (La. 1989); Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111, 113 (1953). When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation. Bernard Lumber Co., Inc. v. Louisiana Ins. Guar. Ass'n, 563 So.2d 261, 263 (La.App. 1st Cir.), writ denied, 566 So.2d 981 (La.1990) (citing Radar v. Duke Transp. Inc., 492 So.2d 532, 533-34 (La. App. 3d Cir.1986)). The determination of whether a contract is clear or ambiguous is a question of law. Watts v. Aetna Casualty and Surety Co., 574 So.2d 364, 369 (La.App. 1st Cir.), writ denied, 568 So.2d 1089 (La.1990).
Applying these settled principles of construction to the coverage question in the insurance policy in this case, we conclude that the phrase "who lives with you" is not, as a matter of law, ambiguous. The phrase unequivocally expresses the intent of the parties to limit coverage for relatives of the insured to those who "live with" the named insured. The plain, ordinary and popular sense of this expression is not ambiguous. It is equally clear that the question of whether a spouse or relative "lives with" the named insured is a question of fact (Strickland, supra) to be determined on a case-by-case basis according to the facts and circumstances of each particular case. Cf. Taylor v. State Farm Mutual Automobile Ins. Co. 248 La. 246, 178 So.2d 238 (La.1965).
Therefore, the Bearden case, while instructive, is not controlling in this instance, where the policy language is both different and unambiguous. It remains, then, to determine whether under the facts and circumstances of the instant case, the trial court erred in finding that Courtney Mobley did not live with her father.
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences might be equally reasonable. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
We find that some of the factor's that determine whether a child lives with the named insured include, but are not limited to (1) where the child spends his time when not employed or at school; (2) where the child keeps his or her clothing or other personal belongings; (3) where the child receives his or her mail, including official notices and mail from friends; and (4) whether the child has a bedroom in the parent's house. Of course, these factors are not exclusive, nor is any one factor more determinative than another. Consideration should also be given to the fact that a child may "live with" each separated or divorced parent under a joint custody plan.
At the time of the accident Mr. Mobley had lived in an apartment in Shreveport for over two years with a roommate. At the time of trial, he was living with another woman. Courtney and her sister never spent a single night at her father's apartment because there was another man in the house and her father said it would not "look good." She testified that she generally saw her father every other weekend and there was overnight visitation at his mother's house between 10 and 20 times during the year prior to the accident. Mr. Mobley said much of the visitation involved trips to nearby *1122 parks and amusement parks such Six Flags, Disneyworld, Hamels in Shreveport and the like. Mr. Mobley also testified that after the accident he helped Courtney on a daily basis with her school work in mathematics. None of Courtney's personal belongings were at Mr. Mobley's apartment, nor did she have personal belongings at her paternal grandmother's unless inadvertently left there. Significantly, when asked at trial how she would respond if she were asked who she lived with, Courtney stated she would say she lived with her mother.
Mr. Mobley testified that he made all house payments and did maintenance work on the community property house, specifically recalling that he dug up some overgrown shrubs. He also testified that he had a key to the house. On the other hand, Mrs. Mobley paid her own household expenses. Mr. Mobley never spent a night at the residence after the separation, although Mrs. Mobley testified that he could have come to the house any time he wanted. Mrs. Mobley said that there were still some personal belongings of Mr. Mobley in the house.
Both Courtney and Peggy Mobley were sent by Dr. Glenn Scholte, a pain management specialist, for several interviews with Dr. Saxon Bear (formerly Dr. Shot), a clinical psychologist. Testifying from her notes taken at the time of the interviews, Dr. Bear stated that Mrs. Mobley complained of the burden of being a single parent, and Courtney stated that she felt rejected by her father because she did not see him much and complained she had not seen him in three months at the time of the interview.
We also note that, unlike the circumstances in Bearden, where there was one insurance policy issued prior to separation and covering both vehicles owned by the legally separated spouses, in this case Mrs. Mobley had her own insurance policy which she obtained from a different agent covering her personal vehicle. It is unknown whether the vehicle was obtained after legal separation some nine years earlier. The policies under which she seeks coverage for the injuries to Courtney were issued to Mr. Mobley from a different agent and are distinct contracts of insurance. Although the truck is allegedly still community property, inasmuch as it was purchased during the marriage back in 1977, this fact is of little consequence in our determination of whether Courtney was living with her father.
We also find that the length of separation in this case, nine years, significantly distinguishes the circumstances in Bearden, where the couple had been separated for only nine months at the time of the accident. Although, like Bearden, no division of community property had taken place, the Bearden case involved the relationship of the husband and the estranged spouse. In this case, the question is whether a child "lives with" her father.
We conclude that the trial court was not clearly wrong in finding that Courtney did not live with her father for purposes of coverage under the UM policies in question. Considering all the factors enumerated above and the other circumstances in the case, it is apparent that the child lives with her mother.
Finally, because we have determined that the insurance policy language at issue in this case is not ambiguous and the intent of the parties is clear within the four corners of the contract, plaintiff's second assignment of error is rendered moot.
For these reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.