714 So.2d 792 (1998)
Kimberly Kay LAFLEUR and Jacinta L. Gatte, Plaintiffs-Appellees,
v.
Melissa L. DUGAS, Safeway Insurance Company, Defendants, and
State Farm Insurance Company, Defendant-Appellant.
No. 97-958.
Court of Appeal of Louisiana, Third Circuit.
May 6, 1998.
J. Wendel Fusilier, Ville Platte, for Kimberly Kay Lafleur et al.
John Edward Ortego, Lafayette, for State Mutual Automobile Insurance.
Before DOUCET, C.J., and WOODARD, PETERS, AMY and SULLIVAN, JJ.
DOUCET, Chief Judge.
Defendant and appellant, State Farm Mutual Automobile Insurance Company (hereinafter referred to as State Farm), appeals a judgment of the trial court in favor of Kimberly Kay Lafleur and Jacinta L. Gatte, plaintiffs and appellees, which found that a policy of insurance issued by State Farm to Daniel Dugas provided coverage to Daniel's wife, Melissa Dugas. Melissa Dugas and her insurer, Safeway Insurance Company (hereinafter referred to as Safeway) were also named as additional defendants herein.
We find that the State Farm policy at issue does not provide coverage for Melissa Dugas under the facts and circumstances of this case and thus reverse the judgment of the trial court and dismiss State Farm accordingly.

FACTS
The sole issue in this appeal is whether insurance coverage exists for an automobile accident involving Melissa Dugas occurring July 24, 1997. Daniel and Melissa Dugas were married on August 21, 1992. They established their matrimonial domicile in Lafayette, Louisiana. The family automobile, a Geo Metro, had been purchased by Daniel prior to their marriage. In February of 1993, Daniel purchased insurance on the Geo through State Farm. Melissa was not a named insured on the policy. The policy was again renewed in February of 1994 for six months. Shortly thereafter, in early March *793 of 1994, Daniel and Melissa separated, and Melissa moved her minimal furniture and all of her personal belongings into her parents' apartment. Subsequently, on July 24, 1994, Melissa was involved in an automobile accident while driving her parents' automobile. She had recently been added as a named insured on her parents' insurance policy with Safeway Insurance Company.
Melissa admitted being at fault in the accident, and Safeway provided primary coverage. Insofar as the Safeway policy provided only minimal coverage, Lafleur and Gatte, plaintiffs herein, attempted to collect on the State Farm policy issued to Melissa's husband, Daniel Dugas. State Farm denied coverage based upon the following definition contained within the policy: "Spousemeans your husband or wife while living with you " (emphasis ours). State Farm contends that its policy did not provide coverage to Melissa because Melissa was not living with Daniel at the time of the accident.
Prior to trial, the parties reached a stipulation wherein Melissa Dugas admitted that she was at fault in causing the accident. The plaintiffs dismissed all claims against her, personally. The parties further agreed that the sole issue to be tried to the trial judge was the question of coverage under the State Farm policy. Finally, they also agreed that, if the trial judge found coverage, judgment would be rendered against State Farm only and then only for its policy limits.
At the close of the trial, the trial judge ruled in favor of plaintiffs, concluding that the policy provided coverage notwithstanding its language because it was "purchased and paid for during the existence of the marriage." The trial court reasons stated as follows:
This seems to have been a six months renewal policy and it was renewed, if that's correct, February 1994, and the accident, of course, occurred July of 1994. So this policy was obviously renewed during the period of the marriage and the Court ... while there is some conflict in the evidence that's contained into the record, there's an affidavit that seems to contradict what was said in the deposition by Ms. Melissa Dugas. The Court will find that Melissa Dugas was covered by this policy notwithstanding the language contained in the insurance policy.... This policy was purchased and paid for during the existence of the marriage. The policy... was paid in February 1994. The accident occurred in July of 1994. It's a six month policy. So she's covered as far as this Court's concerned.
State Farm appeals that ruling.

LAW AND DISCUSSION
The instant case hinges upon an interpretation of the phrase, "who lives with you" in the definition of "spouse" in the State Farm policy.
In Strickland v. State Farm Ins. Companies, 607 So.2d 769 (La.App. 1 Cir.1992), (third emphasis added) the court was faced with the same issue in a case where a minor child of separated parents was claiming coverage under a parent's policy with whom he was not residing. The First Circuit stated regarding the interpretation of policy language:
Strickland asserts "Louisiana laws on contractual interpretation support an interpretation of this insurance contract in favor of coverage." The rules for interpreting a contract are found in La.C.C. art. 2045 et seq. The general rules for interpreting contracts of insurance are set forth in Pareti v. Sentry Indemnity Company, 536 So.2d 417, 420 (La.1988), as follows:
There are certain elementary legal principles which apply to the interpretation of insurance policies. An insurance policy is a contract and, as with all other contracts, it constitutes the law between the parties.... If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written....
An insurance contract is to be construed as a whole, and one portion thereof should not be construed separately at the expense of disregarding another.... If "there is an ambiguity in a policy, then that ambiguity should be construed in favor of the insured and against the *794 insurer.... However, courts have no authority to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language. [Citations omitted.]
See also, Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991). Further, courts should not strain to find an ambiguity where none exists. Cell-O-Mar, Inc. v. Gros, 479 So.2d 386 (La.App. 1st Cir.1985), writs denied, 481 So.2d 1332, 1333 (La. 1986). Whether a contract is ambiguous or not is a question of law. Borden, Inc. v. Gulf States Utilities Company, 543 So.2d 924 (La.App. 1st Cir.), writ denied, 545 So.2d 1041 (La.1989); Aycock v. Allied Enterprises, Inc., 517 So.2d 303 (La.App. 1st Cir.1987), writs denied, 518 So.2d 512, 513 (La.1988).
We have found no published cases interpreting the phrase "who lives with you" found in this policy. Generally, a relative, for purposes of insurance coverage, is defined as a resident of the same household as the named insured. See W. McKenzie and H. Johnson, 15 Louisiana Civil Law Treatise, Insurance Law and Practice, §§ 43-49, 107, pp. 114-125, 228 (1986). We conclude, as a matter of law, that the phrase "who lives with you" is not ambiguous and should be given its generally prevailing meaning. La.C.C. art. 2047. Strickland, 607 So.2d at 772.
Although we may easily determine from the jurisprudence that the phrase "who lives with you" is not ambiguous as a matter of law, we must still determine, under the facts of this case, whether Melissa lived with Daniel for purposes of coverage.
In Mobley v. State Farm Mutual Automobile Ins. Co., 28,357 (La.App. 2 Cir. 5/8/96), 674 So.2d 1117, writ denied, 96-1402 (La.9/2/96), 679 So.2d 433, the Second Circuit had before it a situation where a husband and wife had been legally separated and their minor child, who resided with her mother, was involved in an accident. The mother brought suit on behalf of her daughter against the husband's UM carrier. The insurer was successful in rejecting coverage based on the policy definition of a "relative" as being one "who lives with [the insured]". Mobley at 1118. Both the trial and appellate courts concluded that the language was not ambiguous and should be given its generally prevailing meaning.
The Mobley Court stated on page 1121:
[W]e conclude that the phrase "who lives with you" is not, as a matter of law, ambiguous. The phrase unequivocally expresses the intent of the parties to limit coverage for relatives of the insured to those who "live with" the named insured. The plain, ordinary and popular sense of this expression is not ambiguous. It is equally clear that the question of whether a spouse or relative "lives with" the named insured is a question of fact (Strickland, supra) to be determined on a case-by-case basis according to the facts and circumstances of each particular case. Cf. Taylor v. State Farm Mutual Automobile Ins. Co. 248 La. 246, 178 So.2d 238 (La.1965).
The test for determining the meaning of "who lives with you," is stated in Bearden v. Rucker, 437 So.2d 1116, 1121 (La.1983), citing Southern Farm Bureau Casualty Insurance Co. v. Kimball, 552 S.W.2d 207 (Tex. Civ.App.1977), as follows:
The controlling test of whether persons are residents of the same household at a particular time, within the meaning of the policy in question is not solely whether they are then residing together under one roof. The real test is whether the absence of the party of interest from the household of the alleged insured is intended to be permanent or only temporaryi.e., whether there is physical absence coupled with an intent not to return.
In Bearden, a married woman had been legally separated from her husband for nine months when she was injured in an automobile accident as a guest passenger of a non-owned auto. The issue presented to the court was whether a "Family Combination Automobile Policy" issued in the name of Mrs. Bearden's husband, on a community owned vehicle in Mrs. Bearden's exclusive custody for her use, provided her with UM coverage.
*795 In Bearden, the parties' property remained in joint ownership; the parties had been married for fourteen years and had three children. Although the policy was issued before the accident, the renewal, the parties' legal separation, and the accident occurred after the parties separated. The supreme court noted that the Bearden's insurance agent was aware that the parties were separated at the time the policy was renewed. Mrs. Bearden retained keys to the family home where she visited several times a week and was free to come and go as she pleased, and occasionally had meals with her children. At the time of trial, four years after the separation, the parties were still not divorced.
By contrast, in this case, although the policy was issued in Daniel Dugas' name, the vehicle was not a community owned vehicle; the insured vehicle was exclusively in the custody of Daniel and was never used by Melissa after the parties were separated. She did not have a key nor was she even aware of where Daniel lived. Additionally, in the instant case, Melissa was a named insured on her parent's policy covering the vehicle involved in the accident while Mrs. Bearden did not have additional coverage. Although the parties had not filed for a divorce, the evidence revealed that no filing had taken place because Melissa did not have any money, and also Daniel was going to take care of the filing. Also, Melissa is attempting to obtain coverage pursuant to the liability portion of the policy at issue on a non-owned automobile. In Bearden, the coverage sought was UM coverage which by its very nature is designed for coverage on non-owned vehicles.
As in the instant case, in Bearden, under the terms of the policy, coverage would be afforded if it was determined that Mrs. Bearden was, at the time of the accident, "a resident of the same household" as her husband.
In Bearden, both the trial and appellate court judgments denied coverage, finding that Mrs. Bearden did not reside with her husband. The Louisiana Supreme Court reversed, however, after finding that the phrase, "resident of the same household," was ambiguous because the word "resident" had no fixed meaning. Construing the ambiguity in the policy in favor of coverage, the supreme court noted, citing American States Ins. Co. v. Walker, 26 Utah 2d 161, 486 P.2d 1042, 1044 (1971), in Bearden, 437 So.2d at 1121:
[T]he residence in question "emphasizes membership in a group rather than attachment to a building"; and it is "a matter of intention and choice" rather than one of location.
More recently, we looked at the issue of a person's intent to return to a former residence, in Chapman v. Poirrier, 98-977 (La. App. 3 Cir. 2/5/97), 689 So.2d 623, writ denied, 97-1164 (La.6/20/97), 695 So.2d 1358. In Chapman, 689 So.2d at 625 (citations omitted), we found that a nineteen-year-old high school student who had left her parents' home without an intent to return was not insured under her parents' automobile liability policy:
Whether a person is a member of a household (i.e., member of a residence) is a question of law as well as fact that is determined on a case by case analysis. This determination must be based on the evidence as a whole, not on isolated facts that support a particular conclusion. And, a trier of fact's determination is entitled to great weight, and will not be disturbed if a reasonable factual basis exists to support the lower court's judgment.
Put another way, as did the First Circuit in Miley v. La. Farm Bureau Cas. Ins. Co., 599 So.2d 791, 798 (La.App. 1 Cir.), writ denied, 604 So.2d 1313 (La.1992) (emphasis added):
The question is largely one of intention. The intention of a person to be a resident of a particular place is determined by his expressions at times not suspicious, and his testimony, when called on, considered in light of his conduct and circumstances of life. Andrade v. Shiers, 516 So.2d 1192, 1194 (La.App. 2d Cir.1987).
Miley involved facts strikingly similar to the case at bar, wherein the insured's spouse died in an automobile accident three months after the couple had separated. In Miley, *796 the wife moved out of the family home, took her belongings, and did not keep a key to the family home. Although her husband still helped with her support, she was dating another man. The trial court held that the estranged spouse was not a resident relative for purposes of the husband's uninsured motorist policy. The First Circuit affirmed, finding that it was her obvious intention and choice not to return to the home of her husband. The appellate court, utilizing the Bearden standard set forth above, affirmed the trial court and the supreme court denied writs.

Evidence

Deposition of September of 1995
Melissa testified in her pre-trial deposition that between the time she and Daniel separated in March of 1994 and July 24, 1994, the date of the accident, they neither dated nor reconciled nor talked, and that as of the date of the accident, she had no intention of returning to the matrimonial domicile. Also in her deposition of September 20, 1995, she testified that March of 1994 was the first time she and her husband had separated. At her deposition she did not know if Daniel was working or where he lived because she did not talk to Danny the whole time they were separated. Melissa also testified that she had not seen Daniel and had not been in the same room with him since she left and that the last time she had sexual relations with him was in February, the month before she left.
Melissa's mother testified by deposition at the same time, on September 20, 1995. She also testified that Melissa and Daniel had not reconciled between their separation in March of 1994 and the accident. She stated that Daniel would visit at Melissa's parents' apartment and Melissa would go outside and argue with him. She testified that Melissa loved Daniel but did not intent to go back with him. She testified that Daniel did come to visit Melissa after the accident.

Trial-April 1, 1997
At trial, on direct, Melissa testified that she had a child on January 4, 1996, but that it was not Daniel's child. She testified that Daniel came to see her after the accident regarding the filing of an insurance claim. Additionally, she testified that they now talk over the phone but that they had not been intimate since the accident. She stated that several weekends before trial she had spent time at his house. She testified that she still loves him, and has always loved him before and after the accident, and that he has asked her to go back with him and they are trying to reconcile. She testified that she always hoped they could talk and hoped for a reconciliation.
On cross examination, Melissa testified that she had lived continuously with her parents from March of 1994 until July 24, 1994, the time of the accident. She did not have a key to the Geo at the time of the accident, and Daniel was not paying her any support between March and the accident in July of 1994. She stated again at trial, that at the time of her deposition in September of 1995, she did not know where Daniel was living. At trial, Melissa confused the issue even further by testifying that in July of 1994, at the time of the accident, she had no intent to live with Danny but that it was not true that she had no intent to return to live with him. It appears from the record that she did not want to return to the marital domicile as long as his drinking and gambling problems persisted. She testified that no divorce proceedings had been filed because she did not have the money and Danny had said that he would do the filing.
Also, on cross examination, Melissa testified that between March and July of 1994, that there was no contact between her and Danny and that she would hang up on his calls and refuse to talk to him when he would come by her parent's apartment. Melissa and her mother had even considered putting a block on the phone for his calls. She again stated that she and Daniel had never been in the same room between March of 1994 and September of 1995 and that they did not have sexual relations during this time period.
On redirect, she testified that they are trying to reconcile ever since she left and that she had stayed at his house for a weekend since the child was born in January of 1996.
*797 On recross, she testified that she had doubts that Daniel was the father of her child because she had "been with one man before."
Finally, Melissa's mother testified at trial that Melissa and Daniel had been through numerous separations, that they had tried to reconcile and had gone back together for a few months after the accident. She assumed that was when Melissa became pregnant.

Affidavit
The record also included an affidavit attested to by Melissa on December 27, 1995, submitted in opposition to State Farm's prior motion for summary judgment, which stated that after further investigation since her deposition, she had determined that Daniel was the father of her child, which was due in January of 1996. She also attested to the fact that "the last night she spent with Daniel Dugas as husband and wife and conceived their child was April 11, 1995."

SUMMARY
This case turns on its facts. There are numerous examples in the record which cause this court to seriously question Melissa's credibility. Her testimony changed greatly between the time of the deposition and the time of trial. Most striking in this case, was the fact that Daniel was neither deposed nor called to testify and corroborate her testimony.
The record does not show a pattern of breaking up and reconciling. Therefore, this court has no reason to presume that the couple had any intent to reconcile or that Melissa had any intent to return to the family domicile at the time of the accident, five months after the couple's separation. The record further reveals that at the time of the proceedings herein, April 1, 1997, the couple had not reconciled or resumed a relationship.
Considering the clear language of the policy and Melissa's testimony, we can only conclude that the trial judge was clearly wrong when he determined Daniel's State Farm policy provided coverage to Melissa at the time of her accident.
As stated in Mobley, 674 So.2d at 1121:
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences might be equally reasonable. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
In this case, the trial court reasons do not reflect that the trial court found Melissa credible or that the trial court found that she and her husband intended to reconcile. Instead, the trial court appears to have based its ruling on a matter of policy, i.e., that the accident had happened during the renewal period and that the premiums for the renewal were paid for by Daniel, the insured, during the marriage. Therefore, we are not reversing a credibility determination of the trial court.
However, the trial court erred in its application of the present law to the facts of this case. Although we may not be pleased with this result, the law dictates that we find that coverage will not apply to an estranged spouse, when not a named insured, even during the renewal period, when he or she leaves the family home with no intent to return. Although later actions may be relevant, Melissa's intent at the time of the accident is the pivotal time period for this court's consideration. See Bearden, 437 So.2d at 1122, n. 8. The evidence simply did not support a finding that Melissa, as stated in Miley, 599 So.2d at 798, "at times not suspicious," intended to be a resident of Daniel's household in July of 1994, at the time of the accident.

CONCLUSION
Accordingly, for the reasons stated, the judgment of the trial court is reversed, and State Farm Mutual Automobile Insurance Company is dismissed from this suit, with prejudice. All costs of this appeal are assessed *798 against Appellees, Kimberly Lafleur and Jacinta Gatte.

DECREE
REVERSED.
PETERS, J., dissents and assigns written reasons.
WOODARD, J., dissents for the reasons assigned by PETERS, J.
PETERS, Judge, dissenting.
I respectfully dissent. As stated by the majority, the only question in this appeal is whether insurance coverage exists under the State Farm policy issued to Daniel Dugas for an automobile accident involving his wife, Melissa. The majority's reversal of the trial court's decision which found that coverage was afforded under the State Farm policy fails to take into account the public policy considerations recognized in Bearden v. Rucker, 437 So.2d 1116 (La.1983).
This accident occurred in July of 1994. When the policy at issue was renewed in February of 1994, Daniel and Melissa Dugas were residing together as husband and wife. Their March 1994 separation did not give rise to any legal proceedings to dissolve the marriage. Thus, their status at the time of the accident was that they were married, but separatednothing more.
The factual situation of this case is very similar to that in Bearden wherein the supreme court found coverage for a separated spouse under a liability policy maintained by her husband. In Bearden, the parties had separated in January of 1976, and the policy covering the community vehicle was renewed after the separation with the insurance agent's full knowledge of the separation. The parties were legally separated in June of 1976, and the accident at issue occurred in September of 1976. Mrs. Bearden was a guest passenger in another vehicle at the time of the accident. The question in Bearden was whether Mrs. Bearden was "a resident of the same household" with her estranged husband for the purpose of policy coverage. The majority cites with favor the supreme court's enunciated test for such a determination, but it bears repeating herein.
The controlling test of whether persons are residents of the same household at a particular time, within the meaning of the policy in question is not solely whether they are then residing together under one roof. The real test is whether the absence of the party of interest from the household of the alleged insured is intended to be permanent or only temporaryi.e., whether there is physical absence coupled with an intent not to return.
Id. at 1121.
The supreme court further noted that the facts concerning the physical absence "must be considered in light of our matrimonial regimes laws and the public policy underlying them which favors preserving the marriage." Id. at 1122.
The facts in the case before us reflect that ultimately there was no reconciliation. As in Bearden, there was evidence of an intent that the separation would be permanent as well as evidence of a possible reconciliation. Unlike Bearden, no legal action had been filed to dissolve the marriage, and the parties had not separated long enough for the policy to require renewal. Thus, when the policy was written, Melissa was an insured under the policy, and the insurer certainly collected a premium for the coverage.
The majority relies primarily on Mobley v. State Farm Mutual Automobile Insurance Company, 28,357 (La.App. 2 Cir. 5/8/96), 674 So.2d 1117, writ denied, 96-1402 (La.9/20/96), 679 So.2d 433 and Strickland v. State Farm Insurance Companies, 607 So.2d 769 (La. App. 1 Cir.1992) to reach an interpretation of the coverage language. However, I find both of these cases to be distinguishable from the case before us in that both addressed situations where the minor child of separated parents was involved in the accident sued upon, and not the spouse.
I find that the supreme court's decision in Bearden is controlling and would affirm the trial court's judgment in all respects.