516 So.2d 1192 (1987)
Jesus ANDRADE, Plaintiff-Appellee,
v.
Jesse SHIERS, Ramona Shiers and Southern Farm Bureau Insurance Company, Defendants-Appellants.
No. 19112-CA.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1987.
*1193 Mark E. Posey, Rayville, for defendants-appellants, Jesse and Ramona Shiers.
Samuel T. Singer, A Professional Law Corp. by Stephen G. Dean, Winnsboro, for plaintiff-appellee.
Cotton, Bolton & Hoychick by Terry A. Doughty, Rayville, for defendant-appellee, LA Farm Bureau Ins.
Before MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
In this action for personal injury damages, the defendant-homeowners appeal a summary judgment dismissing plaintiff's demand against their homeowner's insurer. Summary judgment upheld the insurer's contention that the plaintiff, who is the father of the wife-homeowner, was an omnibus insured and was not covered for liability purposes because of the policy description of an insured as a "relative" who is a "dependent resident of the [homeowner's] household."
The insurer seeks to dismiss the defendant-homeowners' appeal on the grounds that the summary judgment against the plaintiff, who did not appeal, is final and that the coverage issue is moot or the defendant-homeowners have no right to appeal the issue.
We deny the motion to dismiss and reverse the summary judgment, finding that genuine issues of fact that are material to the coverage issue are disputed. CCP Arts. 2082, 966(B).

MOTION TO DISMISS APPEAL
Appeal is the exercise of the right of a party to have a judgment of a trial court revised, modified, set aside, or reversed by an appellate court. CCP Art. 2082. The sole object of an appeal is to give an aggrieved party to a suit recourse to a superior tribunal for the correction of a judgment of an inferior court. Any party, or person who could have intervened in the trial court, who is aggrieved by a trial court judgment has the right to appeal that judgment unless he has acquiesced therein, or is otherwise deprived of that remedy. CCP Arts. 2085, 2086. A party to a suit is given an unqualified right to appeal from an adverse final judgment and need not allege and show a direct pecuniary interest in order to be entitled to appeal. Emmons v. Agricultural Insurance Company, 245 La. 411, 158 So.2d 594 (1963). A person need not have a judgment directly against him in order to appeal that judgment. Brock v. Tidewater Construction Company, 318 So.2d 100 (La.App. 3d Cir.1975).
Appellants are parties-defendants. They are aggrieved by the judgment, which implicitly decrees that their insurer does not have a duty to defend this claim on their behalf or to pay any part of a judgment on the merits if appellants should be cast in judgment. Appellants have not acquiesced in the summary judgment in favor of their insurer on the coverage issue.[1]
Appellants have an actual interest in this appeal and the issue of the correctness of the summary judgment dismissing the insurer from this suit is before us. See Ewing v. Sharp, 294 So.2d 902, 905 (La. App. 2d Cir.1974).

SUMMARY JUDGMENT MATERIAL FACTS
Appellants are the daughter and son-in-law of the plaintiff. While plaintiff was living with them in Richland Parish, he was injured by their cow when he tried to pick up her newborn calf. He sued them and their liability insurer. After some depositions were taken, the insurer filed a motion *1194 for summary judgment asserting that plaintiff's claim was excluded from coverage under the policy. The liability section of the policy does not cover personal injury claims of any "insured." The word "insured" is defined to include "relatives of the named insured or his spouse" if they are "dependent residents of the household."
Plaintiff, in his mid-70's, is a citizen of Mexico who speaks little or no English. His deposition was taken through a translator. He did not own a home in Mexico but has lived with different relatives there, including his sister and two of his other children. Besides those children and his Louisiana daughter, plaintiff has other children and a wife with whom he has not lived for several years. He is not legally separated. The wife and other children live in California. Plaintiff moves around and stays with each of his several children from time to time. He explains that he does not go to California very often because it is too far away.
About ten months before the accident, plaintiff came to Richland Parish with appellants when they returned from a visit to Mexico. He is in the United States as what he calls an "undocumented alien." He did not intend to stay very long in Louisiana. Shortly after he arrived, plaintiff's daughter learned she was expecting a child. Plaintiff then determined to extend his stay until after his grandchild was born. The accident occurred one day after the baby was born. When the depositions were taken almost 18 months after the accident, plaintiff was yet living with appellants. Throughout his stay, plaintiff had a room to himself in appellants' home and was free to come and go as he pleased. He ate and slept there, had no job, no income, and did not pay or contribute to the household expenses.
The trial court found from these undisputed facts that plaintiff was clearly a "`dependent resident' in the household of [appellants]." The language used in the policy is "dependent resident of the household." The term "resident of the household" as used in insurance policies, which either extends or denies coverage, has been frequently litigated and construed. The judicial construction of the term was not specifically discussed by the trial court.
Whether a person is or is not a resident of a household is a question of law as well as fact that is to be determined from all of the facts of each case. The question is one largely of intention. The intention of a person to be a resident of a particular place is determined by his expressions at times not suspicious, and his testimony, when called on, considered in the light of his conduct and the circumstances of his life. Fielding v. Casualty Reciprocal Exchange, 331 So.2d 186 (La. App.3d Cir.1976), writ denied.
Whether a living arrangement renders persons "residents of the same household" is not solely dependent upon whether they are living under the same roof. The emphasis is on whether the person can be found to have "membership in a group rather than an attachment to a building." Residency in this respect is "a matter of intention and choice" rather than a matter of location. Bearden v. Rucker, 437 So.2d 1116 (La.1983).
The pattern which emerges from the myriad of decisions considering the term "household" shows an emphasis on "dwelling as a family under one head," whether or not the persons live under the same roof. See and compare Buxton v. Allstate Ins. Co., 434 So.2d 605 (La.App. 3d Cir.1983); and Hernandez v. Comco Ins. Co., 357 So.2d 1368 (La.App. 4th Cir.1978), writ denied.
Plaintiff's intention to be a member of the household headed by his daughter or son-in-law was not thoroughly revealed or explored in the depositions. We quote from plaintiff's deposition, taken through a translator:
Q. Would you ask him how long he was planning on staying when he first came?
A. Three months. He was thinking of staying only three months when this happened. * * *
*1195 Q. So, he had lived there nine months before the accident [on May 31, 1985]?
A. Yeah, around that time. Around May, as far as he remembers.
Q. Could you ask him why he stayed over the three months?
A. He says maybe because he thought the time was short, and he decided he would just stay on. I think he said he had told her [his daughter] to take him ... to the border, so he could go back [to Mexico], but it hadn't happened when the accident occurred.
Q. He decided to stay on for awhile, is that what he's saying?
A. Yes. Yeah. Or that he had told her he wanted to go back, but she for some reason didn't take him.
Q. Okay; okay.
A. He had to have transportation to the border, is the idea. * * * Well, she wanted him to stay here, so she just put him off. She just wanted him to be here with her; so, she just, I guess, ignored what he was asking.
Q. Okay. Could you ask him if he wanted to be here?
A. If he had a [sic] permission, yes. But not without official permission.
Q. No, I'm not talking about his, you know, coming in illegal or anything like that. * * * I'm just asking if he wanted to be with Ramona at her house.
A. Well, he's saying that he wanted to go back and get something official before he stayed more time. He wanted to go back and get an official permission, and then come back and stay with her.
Q. Okay. Ask him if his daughter became pregnant during that time.
A. Yeah, the accident occurredthe accident with the cow occurred one day before [sic] the child was born.
Q. Okay. Would you ask him did he want to stay and see the baby?
A. Yeah, he says he did; yeah.
Plaintiff's daughter testified:
Q. Did your father want to stay until the baby was born, to see the baby?
A. Yes, sir; yes, sir.
Q. Okay. Did he ever say how long he was going to stay?
A. No, not really, Not, you know, exactly the time. But he was not planning on staying that long.
Q. Once he found out you were pregnant, though, he wanted to stay until the baby was born?
A. Yeah. Well, I kind of talked him into, you know, and told him he didn't need to go home and
Q. Did he ever live anywhere else during the time he first got here in August of 1984 until now?
A. No, sir.
Plaintiff's son-in-law testified:
Q. Okay. Did he ever mention how long he was going to stay when he arrived?
A. Un-huh (no). He said he was just going to stay for awhile and then go back home. Never did give no definite time he was going to stay.
Q. No definite time?
A. Said "just for awhile." * * *
Q. Okay. Did he ever at any time say when he was going to leave or anything like that to you?
A. No. He come in, like I say, the first of August, 1984. And then in September, or somewhere thereabouts, we realized that Ramona was pregnant. * * * So, he said that he you know, he wanted to stay and see the baby before he went home. Because he said he probablyhe said he felt like that that would probably be the last time he'd get to see his grandbaby. Because he said when he went back home, he wasn't coming back.
The depositions show at best that plaintiff's subjective desires were not clear in the months before the accident. He wanted to see the new baby, but he also wanted *1196 to go back to Mexico and could not do so without assistance. The length of plaintiff's stay may have been more a matter of what his daughter desired than what he desired. His subjective intent to live in Louisiana as part of a family under one head determines whether he was a "resident of the household." Plaintiff's subjective intent is not resolved as an undisputed fact in the depositions. Under these circumstances, summary judgment was not warranted.
A motion for summary judgment should be granted only if the pertinent documents show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. Summary judgment is warranted only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the undisputed facts before the court. Any doubt must be resolved against the granting of summary judgment and in favor of a trial on the merits to resolve disputed facts. Chaisson v. Domingue, 372 So.2d 1225 (La.1979).
The undisputed facts show that plaintiff was "dependent" on appellants, but the depositions do not establish indisputably the plaintiff's intention to be a resident of his daughter's household. The difficulty of determining his subjective intent is compounded by the language barrier. Because a reasonable conclusion could be drawn either way from the facts elicited in the depositions, a trial on the merits is required to resolve the disputed facts.
This court affirmed a summary judgment that dismissed demands against an automobile liability insurer where the policy excluded coverage for a non-owned automobile that was owned by the insured's adult daughter. The question was whether that daughter was a resident of the named insured's household. Jeffreys v. Mixon, 415 So.2d 332 (La.App. 2d Cir.1982). The supreme court granted a writ and set aside the summary judgment, stating, "Whether the car owner is a `resident' is a disputed fact question." 417 So.2d 361. There the car owner's physical presence in the home of the insured parents after she separated from her husband, and her inability to afford an apartment of her own, were uncontested and undisputed. The only disputed and material fact on which the supreme court could have reversed summary judgment was whether the daughter had the subjective intention to reside in her parents' home as part of that family under one head.

DECREE
The summary judgment dismissing plaintiff's action against the insurer is reversed at the insurer's cost and the case is remanded for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] The judgment also dismissed without prejudice, as premature, their incidental demand against the insurer for failing to settle this claim within policy limits. The fact that they did not seek review of that ruling does not amount to acquiescence in the ruling on the coverage issue.