653 So.2d 822 (1995)
Vickie JONES, Individually and as Tutrix of Her Minor Child, Allen Michael Jones, Plaintiff-Appellant-Appellee
v.
CRANE CO., Republic Insurance Co., and George Jones, Defendants-Appellees-Appellants.
No. 26781-CA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 1995.
*823 Woodrow W. Wyatt, Monroe, for appellant.
F. Williams Sartor, Jr., Thomas Hayes, III, Monroe, and P. Chauvin Wilkinson, Jr., Baton Rouge, for appellees.
Before MARVIN, C.J., and WILLIAMS, J., and CULPEPPER, J. Pro Tem.
WILLIAMS, Judge.
This is an action for damages resulting from the use of an allegedly defective central heating unit in the home of the defendant, George Jones. The plaintiff, Vickie Jones, individually and as the tutrix of her minor child, Allen Michael Jones, filed this suit against the defendant, his homeowner's insurer, Republic Insurance Company (Republic), and the manufacturer of the allegedly *824 defective heater, Crane Company (Crane). Subsequently, Republic and Crane successfully moved for summary judgments and were dismissed from the action. The plaintiff appeals. For the following reasons, we reverse.

FACTS
On December 12, 1989, the plaintiff spent the night in the home of her father-in-law, George Jones. That night, while plaintiff slept, the 1963 gas-fired central heating unit leaked carbon monoxide and poisoned her. The next day, the plaintiff prematurely gave birth to her son, Allen Jones, who was born with severe birth defects. Subsequently, the plaintiff instituted this action seeking to recover for the damages that she and her son sustained on the night of the incident.
Republic and Crane successfully moved for summary judgments. In granting the motion for summary judgment filed by Republic, the trial court concluded that the plaintiff was a resident of George Jones' household and, as such, was not covered by his homeowner's insurance policy. In granting the motion for summary judgment filed by Crane, the trial court concluded that the plaintiff's action against Crane was perempted under LSA-R.S. 9:2772. Challenging the propriety of the trial court's action in granting the motions for summary judgment, the plaintiff appeals.

DISCUSSION
The plaintiff alleges the trial court erred in granting the motions for summary judgment and denying her claims against Republic and Crane. She argues that genuine issues of material fact existed and neither party's motion should have been granted.
The motion for summary judgment is a procedural device used to avoid a full scale trial where there is no genuine factual dispute. Rhodes v. Executive Risk Consultants, Inc., 26,021 (La.App. 2d Cir. 8/17/94), 642 So.2d 269, 272. Under LSA-C.C.P. Art. 966, a trial court can properly grant a motion for summary judgment only when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. Rhodes v. Executive Risk Consultants, Inc., supra. When reviewing the granting of a motion for summary judgment, the appellate court must review the record de novo, under the same criteria which governed the trial court's consideration of whether the summary judgment was appropriate. Tugwell v. State Farm Insurance Co., 609 So.2d 195 (La.1992).
The party seeking the summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact. To satisfy this burden, the moving party must meet a strict standard by showing that the truth is self-evident and that there exists no real doubt as to the existence of any genuine issue of fact. Barnett v. Staats, 25,357 (La.App. 2d Cir. 1/19/94), 631 So.2d 84. A fact is material if its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Material facts are those which potentially insure or preclude recovery, affect the litigants' ultimate success, or determine the outcome of a legal dispute. Barnett v. Staats, supra; Security Nat. Trust v. Kalmback, 613 So.2d 664 (La.App. 2d Cir.1993).
In determining whether the mover satisfied his burden of proof, the court shall closely scrutinize the documents supporting the mover's position, while treating the opposing documents indulgently. Bradford v. Louisiana Downs, Inc., 606 So.2d 1370 (La.App. 2d Cir.1992). The inferences drawn from the underlying facts contained in the summary judgment evidence and materials must be viewed in the light most favorable to the party opposing the motion. Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991). Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. Chaney v. National R.R. Passenger Corp., 583 So.2d 926, 930 (La.App.1st Cir.1991).
INSURANCE COVERAGE:
In regard to Republic's motion for summary judgment, the homeowner's insurance *825 policy in question does not provide coverage for liability arising out of bodily injury to an "insured." The term "insured," as defined in the policy, includes any "relative" of George Jones, the named insured, who is a "resident of his household." Here, none of the parties deny that, at the time of the incident, the plaintiff, the named insured's daughter-in-law, was a "relative" of the named insured. See Liprie v. Michigan Millers Mut. Ins. Co., 143 So.2d 597 (La.App. 3d Cir.1962). Therefore, the central question to be resolved in this case is whether a genuine issue of material fact existed as to whether the plaintiff was a "resident of the named insured's household" at the time of the incident.
The terms "resident" and "household," as used in the phrase "resident of the named insured's household," are not defined in the insurance policy. Nevertheless, those terms, as used here, have been frequently litigated and construed, and they signify the common and usual meanings associated with insurance contracts. See Taylor v. State Farm Mutual Auto. Ins. Co., 248 La. 246, 178 So.2d 238, 241 (1965); Tucker v. State Farm Fire & Cas. Ins. Co., 599 So.2d 447, 449 (La.App. 2d Cir.), writ denied, 604 So.2d 1004 (1992); and Andrade v. Shiers, 516 So.2d 1192, 1194 (La.App.2d Cir.1987).
A "household" is a group of people living together as a family, and, for insurance purposes, the term is generally synonymous with "family." BLACK'S LAW DICTIONARY 740 (6th ed. 1990).
The term "household" embraces a collection of persons as a single group living together under one roof. It is a "collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness."
Miley v. Louisiana Farm Bureau Cas. Ins. Co., 599 So.2d 791, 798 (La.App. 1st Cir.), writ denied, 604 So.2d 1313 (1992) (citation omitted). "The pattern which emerges from the myriad of decisions considering the term `household' shows an emphasis on `dwelling as a family under one head,' whether or not the persons live under the same roof." Andrade v. Shiers, supra. The correct inquiry for determining whether a person is a resident of a particular household with respect to insurance coverage is to determine the individual's attachment to a group or to a person, rather than to a building. Tucker v. State Farm Fire & Cas. Ins. Co., supra.
Whether a person is or is not a resident of a household is a question of law as well as fact that is to be determined from all of the facts of each case. The question is one largely of intention. The intention of a person to be a resident of a particular place is determined by his expressions at times not suspicious, and his testimony, when called on, considered in the light of his conduct and the circumstances of his life.
Andrade v. Shiers, supra (citation omitted).
In the instant case, the undisputed facts contained in the summary judgment evidence and materials show that the plaintiff, at age sixteen, married the defendant's son on April 6, 1989. She and her husband initially resided in her grandmother's house for the first four months of their marriage. The plaintiff's aunt, uncle and their three children also lived there. After the first four months of their marriage, they moved into a furnished apartment for which they paid $75 a week rent. The plaintiff was unemployed, and she and her husband lived in the apartment for only two months, until her husband lost his job. When they moved out of the apartment, they stayed with a friend in an apartment for about a week. Then, by November 7, 1989, the plaintiff and her husband had relocated to George Jones' house.
The plaintiff and her husband resided with George Jones until November 29, 1989. On that date, plaintiff began living with her aunt to help her family deal with the death of her grandmother. On December 12, 1989, the plaintiff returned to George Jones' house. She was allegedly poisoned that night. After giving birth, her newborn son remained in the hospital for several weeks, and, during that time, the plaintiff resided at her aunt's house.
Other evidence presented during the hearing on the motion for summary judgment, *826 when viewed in a light favorable to the plaintiff, shows that when the plaintiff and her husband moved into the defendant's house, they intended for the arrangement to be temporary. They agreed to pay the defendant $50 a week in rent for living in the house when they had the money. Ultimately, they paid the defendant no more than $40 for the month before the incident. They further agreed to perform household chores in exchange for living in the house.
According to the plaintiff, she and her husband moved into the defendant's house solely because they were unemployed, had little or no money, and needed a place to live. The plaintiff testified at her deposition that she hated staying at the defendant's house and had intended only to stay there until her husband could find a job and they could move. The plaintiff's husband indicated in his deposition that he had no predisposition for living with the defendant and stated he would have moved away if he had a realistic chance of successfully doing so.
Based on the record, we do not find that reasonable minds would inevitably conclude that the plaintiff was a "resident of the defendant's household." When the inferences drawn from the underlying facts contained in the pertinent summary judgment documents are viewed in the light most favorable to the plaintiff, reasonable minds could have concluded that the plaintiff did not dwell in the defendant's house as a family under one head, or that she and the defendant did not subsist in common and direct their attention to a common object, the promotion of their mutual interests and social happiness. Rather, one could have reasonably concluded that the plaintiff merely intended to temporarily live in the defendant's house for the purpose of achieving financial stability so she and her husband could afford a home of their own. Accordingly, the trial court erred in granting Republic's Motion for Summary Judgment.
CRANE'S MOTION FOR SUMMARY JUDGMENT:
Next, in regard to Crane's Motion for Summary Judgment, the trial court granted this motion because it found that LSA-R.S. 9:2772 applied to this case and perempted the plaintiff's action against Crane. This statute provides in part:
No action, whether ex contractu, ex delicto, or otherwise, including, but not limited to, an action for failure to warn, to recover on a contract or to recover damages shall be brought ... against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of an improvement to immovable property:
(1) More than ten years after the date of registry in the mortgage office of acceptance of the work by owner; or
(2) If no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, more than ten years after the improvement has been thus occupied by the owner; or
(3) If the person performing or furnishing the land surveying services, as such term is defined in the first paragraph of R.S. 37:682(9), does not render the services preparatory to construction, or if the person furnishing such services or the design and planning preparatory to construction, does not perform any inspection of the work, more than ten years after he has completed the surveying or the design and planning with regard to actions against that person.
Before a product manufacturer can receive the benefits of LSA-R.S. 9:2772, it must prove that its product became an improvement to immovable property and was "construction" or the "construction of an improvement to immovable property," in the words of the statute. DeWoody v. Citgo Petroleum Corp., 604 So.2d 92, 99 (La.App. 3d Cir.), writs denied, 605 So.2d 1369 and 1372 (1992). "This means that in the construction it must be shown that the product manufacturer was a contractor. The statute applies only to contracts to build, and not to contracts of sale." DeWoody v. Citgo Petroleum Corp., supra (citations omitted). See KSLA-TV, Inc. v. Radio Corp. of Am., 501 F.Supp. 891 (W.D.La.1980). See also Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles, 366 So.2d 1381, 1386 (La.1978) (noting *827 the distinction between contractors and product manufacturers is a legitimate justification for excluding product manufacturers from the protection of the peremptive period established by LSA-R.S. 9:2772).
The evidence on this issue indicates the central heating unit in question is the original piece of equipment installed when the house was built in 1963. The unit itself is located in a hall closet, beside a hot water heater. It is connected to the interior electrical wires and gas plumbing pipes. It is also connected to a ventilation system and apparently a duct system. According to defendant's supporting affidavits, the ventilation system to which the unit is connected was neither supplied nor installed by Crane. Also, it does not appear from the evidence that Crane supplied or installed the gas plumbing, the interior electrical wires, or the duct system. More importantly, the record indicates Crane did not install the unit; the unit was installed by the contractor who built the house. Nothing in the record indicates that the unit was designed or manufactured specifically for this particular house. The unit appears to be a typical central heating unit.
Based upon the record, we do not find that reasonable minds would inevitably conclude that the central heating unit was "construction" or the "construction of an improvement to immovable property," within the purview of the statute. Nor can we say Crane sufficiently proved that it was a contractor or that it entered into a contract to build. Accordingly, LSA-R.S. 9:2772 is not applicable in this case. The trial court's finding to the contrary is erroneous.
Alternatively, Crane contends it is entitled to a summary judgment "on the merits of this case." It argues the evidence presented shows that no genuine issues of material fact exist.[1] After reviewing the summary judgment evidence, we conclude that genuine issues of material fact exist and that summary judgment is inappropriate. The plaintiff's claim against Crane is based upon the Louisiana Products Liability Act. In her petition, she alleged that the heating unit was unsafe and defective in its construction and design. She also alleged, inter alia, that she and her son sustained injuries as a result of the heating unit's defective condition and because Crane failed to adequately warn them about an unreasonably dangerous characteristic in the central heating unit.
In support of its motion for summary judgment, Crane introduced the affidavit of an expert mechanical engineer, D. Bruce Cleveland. In the affidavit, Cleveland stated that on October 22, 1992, he personally inspected the Jones' residence and observed the gas fired central heating unit in operation. He observed that the heating unit was mechanically sound and designed in accordance with industry standards that were in force in 1963. He further stated that on the date he examined the heating unit, it was capable of operating within the terms of its listing and that it operated as designed. However, Cleveland did not state or express an opinion in his affidavit that the heater did in fact operate as designed and within the terms of its listing on December 12, 1989, the date of the incident alleged in plaintiff's petition. The fact that the heating unit was capable of being operated as designed, some thirty-four months after the alleged incident, does not exclude the possibility that it did not operate properly on the date of the incident. Whether the heating unit operated properly on the night of December 12, 1989, is a genuine issue of material fact. Without an affirmative showing that the heating unit operated properly on the night of the incident, summary judgment is inappropriate.
Further, Cleveland stated in the affidavit that the unit was designed to be used with a proper ventilation system. Cleveland observed that the vents supplying air into the closet in which the central heater is located were dirty and substantially restricted the fresh air supply. Cleveland further observed *828 that the cap on the vent pipe had deteriorated and no longer served its purpose. He stated that the cap allowed outside wind to back-draft carbon monoxide down the vent pipe into the heater's combustion chamber, which in turn recirculated carbon monoxide in the heater and distributed it throughout the house. Cleveland concluded that, based on the deteriorated condition of the vent pipes as depicted in photographs he observed which were taken on September 4, 1990, and on he found during his October 1992 inspection, the vent cap on the heating unit's vent pipe was the heating unit's vent pipe did missing at vent cap at the time of the alleged injury on December 12, 1989.
Even if Crane's evidence in support of its motion for summary judgment was sufficient to establish that the heating unit's ventilation system was inadequate or had not been properly maintained, Crane failed to submit any evidence to show that the unit's ventilation system was the sole cause of plaintiff's injuries or that Crane used reasonable care to provide an adequate warning about the potential hazard of operating the heater with an inadequate ventilation system or with an improperly installed or maintained ventilation system. Whether an adequate warning was provided by Crane is essential to the plaintiff's cause of action under the applicable theory of recovery and, as such, is a genuine issue of material fact. Accordingly, summary judgment is inappropriate in this case.

CONCLUSION
For the foregoing reasons, the trial court's judgment granting the motions for summary judgment filed by Republic Insurance Company and Crane Company and dismissing the plaintiff's claims is reversed. This case is remanded to the trial court for further proceedings consistent with this opinion. Costs of appeal are assessed one-half to Republic Insurance Company and one-half to Crane Company.
REVERSED AND REMANDED.
NOTES
[1] After the hearing on the motions for summary judgment, the trial judge informed defendant Crane that the court would not grant Crane's motion for summary judgment grounded on plaintiff's failure to, inter alia, put forth evidence to show a defect. The trial court then took the motions under advisement to determine whether the plaintiff's claims were perempted by LSA-R.S. 9:2772.