Judgment rendered September 27, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,267-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

MARGUERITE C. SLATTERY                     Plaintiff-Appellant

versus

ASHLEY N. HOLDSWORTH,                       Defendant-Appellee
ET AL

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 156,092

Honorable Douglas M. Stinson, Judge

* * * * *

JACK BAILEY LAW CORPORATION          Counsel for Appellant,
By: Jack M. Bailey, III              Marguerite C. Slattery

LAW OFFICE OF J. BRAD SMITHERMAN     Counsel for Appellee,
By: J. Brad Smitherman              GEICO General Insurance
                                     Company

* * * * *

Before PITMAN, COX, and HUNTER, JJ.

**HUNTER, J.**

Plaintiff, Marguerite C. Slattery, appeals a district court judgment which granted summary judgment in favor of defendant, GEICO General Insurance Company ("GEICO"). For the following reasons, we affirm.

**FACTS**

On May 6, 2017, plaintiff was riding as a passenger in a vehicle owned and being driven by her father, John B. Slattery, Jr. ("Slattery"). Plaintiff sustained injuries when Slattery's vehicle was struck by a vehicle owned and operated by defendant, Ashley Holdsworth.

Holdsworth's vehicle was insured by Safeway Insurance Company ("Safeway"), and Slattery's vehicle was insured by Unitrin Auto and Home Insurance Company ("Unitrin"). The Unitrin policy provided uninsured/underinsured motorist ("UM") coverage, with bodily injury limits in the amount of $250,000 per person/$500,000 per accident.

Plaintiff owned a vehicle which was insured by GEICO. The GEICO policy provided UM coverage, with bodily injury limits in the amount of $100,000 per person/$300,000 per occurrence.

On May 2, 2018, plaintiff filed a lawsuit against Holdsworth and Safeway, alleging she suffered from a myriad of injuries as a result of the accident. Subsequently, plaintiff filed a supplemental and amending petition, adding GEICO and Unitrin as defendants. Plaintiff later settled her claims against Holdsworth and Safeway, and Unitrin paid plaintiff under the UM provisions of Slattery's policy.

On August 19, 2021, GEICO filed a motion for summary judgment. GEICO argued UM coverage was excluded under its policy because plaintiff was injured while occupying a vehicle owned by her father, and plaintiff and

her father were members of the same household. GEICO asserted plaintiff

had already collected UM benefits from her father's Unitrin policy;

therefore, Louisiana's anti-stacking law, La. R.S. 22:1295(1)(c), prohibited

her from collecting UM benefits under both policies.

Following a hearing, the district court granted GEICO's motion for

summary judgment, stating:

***

I see household as a family living together. There's no
ownership requirement or no lease, you know, that the plaintiff
has to be or the house has to be owned by the plaintiff or leased
by the plaintiff, it's just a family living together which is what
we had in this situation. And so I think the Louisiana Revised
Statute 1295 applies I think.

***

Plaintiff appeals.

## DISCUSSION

Plaintiff contends the district court erred in granting summary

judgment in favor of GEICO. She argues exclusionary clauses must be

strictly construed, and an ambiguous policy provision is generally construed

against the insurer and in favor of coverage. Plaintiff further argues she

entered into a contract with GEICO, whereby GEICO agreed to provide UM

coverage, and she should not have been excluded from UM coverage under

her own policy. She further asserts La. R.S. 22:1295(1)(c) was designed to

prohibit an owner of a vehicle from being able to carry UM coverage on

only one of the multiple vehicles he or she may own and from benefiting

from that UM coverage, regardless of which vehicle they were occupying

when an accident occurs.

2

The law pertaining to motions for summary judgment is well-settled.[1]

Stacking of UM coverages occurs when the amount available under one policy is inadequate to satisfy the damages alleged or awarded to the insured, and the same insured seeks to combine or stack one coverage on top of another for the same loss covered under multiple policies or under multiple coverages contained in a single policy. *See* La. R.S. 22:1295(1)(c);

---

[1] When considering rulings on summary judgment, courts apply a *de novo* standard of review. *Farrell v. Circle K Stores, Inc.*, 22-00849 (La. 3/17/23), 359 So. 3d 467; *Bolden v. Tisdale*, 21-00224 (La. 1/28/22), 347 So. 3d 697. Thus, we use the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Id.* A trial court must grant a motion for summary judgment if the pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3)(4).

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by La. CC.P. art. 969. La. C.C.P. art. 966(A)(2). The procedure is favored and shall be construed to accomplish these ends. *Id.*

A genuine issue is one about which reasonable persons could disagree. *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So. 2d 764; *Grisby v. Jaasim II, LLC*, 54,646 (La. App. 2 Cir. 9/21/22), 349 So. 3d 103, *writ denied*, 22-01573 (La. 12/20/22), 352 So. 3d 87; *Franklin v. Dick*, 51,479 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1130. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Grisby*, *supra*; *Harris v. City of Shreveport*, 53,101 (La. App. 2 Cir. 4/22/20), 295 So. 3d 978. A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Facts are material if they potentially ensure or preclude recovery, affect a litigant's ultimate success or determine the outcome of the legal dispute. *Grisby*, *supra*; *Weaver v. City of Shreveport*, 52,407 (La. App. 2 Cir. 12/19/18), 261 So. 3d 1079.

The burden of proof rests with the mover; nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1). The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.* When a motion for summary judgment is made and supported as provided in La. C.C.P. art. 967(A), an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in La. C.C.P. art. 967(A), must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B). If he does not so respond, summary judgment, if appropriate, shall be rendered against him. *Id.*

3

*Boullt v. State Farm Mut. Auto. Ins. Co.*, 99-0942 (La. 10/19/99), 752 So. 2d

739, *citing* Lee R. Russ & Thomas F. Segalla, Couch on Insurance, 3d §

169.4, at 169-15 to -14, 169.7, at 169-20 to -21 (3d ed. 1998).[2]

Interpolicy stacking occurs when the insured attempts to recover UM

benefits under more than one UM coverage provision or policy, while

---

[2] In *Boullt*, the Louisiana Supreme Court found stacking was permissible under the unique facts of that case. In that case, a 17-year-old girl was a guest passenger in a one-vehicle accident. Her divorced parents each purchased separate automobile insurance policies from State Farm on each of their separately-owned vehicles. Each parent was the named insured only under his or her respective policy, and each policy provided UM coverage. State Farm tendered the limits of its policy to the father but refused to pay under the mother's policy. State Farm asserted the anti-stacking statute precluded recovery under both policies. The Louisiana Supreme Court examined the anti-stacking statute, La. R.S. 22:1406 (currently R.S. 22:1295), and stated:

> The unique facts and circumstances of this case include that the Boullts are divorced and have separate UM policies. Further, the Boullts are legal strangers not only to each other under the law but also to the other's UM policy. Separate premiums had been charged to and paid by different insureds for each of the separate UM policies. Further, the separate policies provided coverage to different insureds covering separate risks. Each parent suffered his and her own injuries although arising from a single occurrence, *i.e.,* Andrea's death. Judy was not an insured under the policy issued to Billy, and Billy was not an insured under the policy issued to Judy. The contracting parties under their respective policies each reasonably expected that only an insured would recover under his or her own policy if the policy provided coverage to the activity in question. The expectations of the contracting parties under Billy's policy were separate and independent of the expectations of the contracting parties under Judy's policy. State Farm contractually agreed to provide each of the Boullts with UM coverage. By allowing State Farm to collect separate premiums from each of the Boullts on their individual policy covering different risks and then deny recovery to the insureds under the polices would be tantamount to State Farm issuing illusory coverage to the parties, providing the insureds with less coverage than he or she paid for, and would clearly violate the reasonable expectation of the contracting parties. Louisiana's public policy strongly favors UM coverage and a liberal construction of the UM statutes. Absent a clear violation of the anti-stacking statute, the parties' intent governs the rights and obligations of the parties. Indeed, an opposite finding today would serve only to frustrate the reasonable expectations of the contracting parties and would be directly contrary to the primary objective of the UM scheme – which is to promote recovery of damages for innocent automobile accident victims by making UM coverage available for their benefit when the tortfeasor is without insurance or is inadequately insured. Simply stated, this case is not a situation of an insured stacking but of distinct and individual insureds each seeking separate recovery under separate policies covering the same event.

*Id*. at 744-45 (Internal citations and footnotes omitted).

4

intrapolicy stacking occurs when the insured attempts to recover UM benefits under a single policy of insurance covering multiple motor vehicles. *Boullt*, *supra.* With one exception, Louisiana's anti-stacking statute prohibits insureds from combining or stacking UM benefits. La. R.S. 22:1295(1)(c) provides:

> If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance *** then such limits of liability shall not be increased because of multiple motor vehicles covered under such policy of insurance, and *such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy*; however, *with respect to other insurance available, the policy of insurance or endorsement shall provide the following with respect to* **bodily injury to an injured party while occupying an automobile not owned by said injured party, resident spouse, or resident relative**, and the following priorities of recovery under uninsured motorist coverage shall apply:
> (i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary.
> (ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.

(Emphasis added). Thus, an insured seeking recovery with multiple limits of UM coverage is limited to recovery under only one policy and may not combine or stack coverages. However, an exception to stacking is permitted if the injured party is occupying an automobile not owned by him/her, a resident spouse, or a resident relative. *Nall v. State Farm Mut. Auto. Ins. Co.*, 406 So. 2d 216 (La. 1981).

The GEICO policy in dispute contained the following provisions:

**SECTION I**

**DEFINITIONS**

5

***

8. **"*Relative*"** means a person related to *you* who resides in *your* household.

***

## SECTION IV

Uninsured Motorists Bodily Injury Coverage
Protection For You And Your Passengers For Injuries Caused
By Uninsured, Underinsured and Hit-And-Run Motorists

## DEFINITIONS

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

***

2. **"*Insured*"** means:

(a) the individual named in the declarations and his or her spouse if a resident of the same household;
(b) **relatives** of (a) above if residents of his household;
(c) any other person while **occupying an owned auto**;
(d) any person who is entitled to recover damages because of **bodily injury** sustained by an **insured** under (a), (b), and (c) above.

If there is more than one **insured**, our limit of liability will not be increased.

***

6. **"*Underinsured Motor Vehicle*"** means a motor vehicle which has a liability bond or insurance policy that applies at the time of the accident but the limits of that insurance are less than the amount the **insured** is legally entitled to recover for damage.

***

## LOSSES WE PAY

Under the Uninsured Motorists Bodily Injury Coverage we will pay damages for *bodily injury* caused by accident which the **insured** is legally entitled to recover from the owner or operator of an uninsured vehicle, underinsured motor vehicle, or hit-and-run motor vehicle arising out of the ownership, maintenance of use of that auto.

***

6

**EXCLUSIONS**

When Section IV Does Not Apply

1. ***Bodily injury*** to an ***insured*** while ***occupying*** \*\*\* an ***uninsured motor vehicle*** owned by an insured or a relative is not covered.
\*\*\*
4. This coverage does not apply to ***bodily injury***, sickness, or disease, including death of an insured resulting therefrom, while ***occupying*** a motor vehicle owned by the ***insured*** if such motor vehicle is not described in the policy under which the claim was made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy.
\*\*\*

**OTHER INSURANCE**

When an ***insured occupies*** an auto not described in this policy, this insurance is excess over any other similar insurance available to the ***insured*** and the insurance which applies to the ***occupied*** auto is primary[.]
\*\*\*

(Emphasis in original).

In *George v. White Consol. Indus., Inc.*, 31,133 (La. App. 2 Cir. 11/6/98), 721 So. 2d 573, this Court stated:

The terms "resident" and "household," as used in the phrase "resident of the named insured's household," have been frequently litigated and construed, and they signify the common and usual meanings associated with insurance contracts. A "household" is a group of people living together as a family, and, for insurance purposes, the term is generally synonymous with "family." BLACK'S LAW DICTIONARY 740 (6th ed. 1990).

*Id*. at 576 (internal citations omitted); *see also*, *Franks v. Sikes*, 54,177 (La. App. 2 Cir. 12/31/21), 331 So. 3d 1107, *amd. and aff'd*, 22-00178 (La. 10/21/22), 351 So. 3d 680.

Whether a person is or is not a resident of a household is a question of law as well as fact that is to be determined from all of the facts of each case. The question is one largely of intention. The intention of a person to be a

7

resident of a particular place is determined by his expressions at times not suspicious, and his testimony, when called on, considered in the light of his conduct and the circumstances of his life. *Id*.; *Andrade v. Shiers*, 516 So. 2d 1192 (La. App. 2 Cir. 1987) *Jones v. Crane Co.*, 26,781 (La. App. 2 Cir. 4/5/95), 653 So. 2d 822.

An insurance policy is a contract between the parties. It should be construed by using the general rules for the interpretation of contracts as set out in the Louisiana Civil Code. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94), 630 So. 2d 759; *Smith v. Matthews*, 611 So. 2d 1377 (La. 1993). The role of the judiciary in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. *Louisiana Ins.*, *supra*; La. C.C. art. 2045. A court is to determine the intent of the parties to an insurance contract "in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning." *Louisiana Ins.*, *supra*; *Breland v. Schilling,* 550 So. 2d 609 (La. 1989). An insurance policy should not be interpreted in an unreasonable manner, such as to enlarge coverage beyond what is reasonably contemplated by the terms of the policy. *Lindsey v. Poole*, 579 So. 2d 1145 (La. App. 2 Cir. 1991) (*citing Zurich Ins. Co. v. Bouler*, 198 So. 2d 129 (La. App. 1 Cir. 1967)). Additionally, "[a]bsent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume." *Louisiana Ins.*, 630 So. 2d at 763; *see also Oceanonics, Inc. v. Petroleum Distrib. Co.*, 292 So. 2d 190, 192 (La.1974).

8

The GEICO policy issued to plaintiff provides coverage to "insured persons," which include "relatives of [the individual named in the declarations page] if residents of his household." As noted earlier, the policy defines a "relative" as "a person related to you who resides in your household." The policy does not define the term "resident." However, the term is not ambiguous as used in the policy of insurance at issue. In *Cadwallader v. Allstate Ins. Co.*, 02-1637 (La. 6/27/03), 848 So. 2d 577, 580-81, the Louisiana Supreme Court addressed an insurance policy's use of the term, "relative," and stated as follows:

> As a general rule, when the word "relative" is used in insurance contracts it is intended to include persons related by marriage as well as blood. Our appellate courts have consistently held that the term "relative" includes relatives by blood or marriage. The First Circuit found no merit to the argument that the insurance policy was ambiguous because it did not define the term "relative." As that court correctly noted, the jurisprudence clearly indicates that the term "relative" includes persons related by blood as well as marriage.
>
> Webster's Universal Unabridged Dictionary (1989) defines "relative" as "one who is connected with another or others by blood or marriage." In the Oxford English Dictionary (1989) and in Black's Law Dictionary, 6th ed., the word "relative" is defined as "a kinsman; a person connected with another by blood or affinity." The Third Circuit stated *** a review of the many definitions of the word "relative" contained in Words and Phrases indicates that when the word relative is used in insurance contracts and where no other specific definition is given, it is generally interpreted as including persons who are related by affinity or marriage as well as by blood or consanguinity. A review of Words and Phrases, Vol. 60, p. 221, reveals that the term "relative" indicates persons related by blood as well as marriage.

The plain meaning of the definitions in the policy at issue is clear and unambiguous. A relative, one who is connected by blood, will be considered a "resident relative" if he or she resides in the named insured's household. Because this provision is not ambiguous, GEICO is entitled to use its

9

definition of "resident," agreed to by both parties, to limit its coverage as long as the definition does not conflict with either statutory law or public policy. *Louisiana Ins.*, *supra*, at 763.

Further, when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. The words of a law must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the law involves a technical matter. La. C.C. art. 11. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. art. 12.

In *Richard v. State Farm Mut. Auto. Ins. Co.*, 39,868 (La. App. 2 Cir. 6/29/05), 907 So. 2d 886, this Court addressed a prior version of the anti-stacking statute. In that case, the plaintiff was driving his wife's Nissan Maxima and had stopped at a red light. A vehicle driven by Kenisha Bullard struck the rear of the Richards' vehicle, and the plaintiff was injured in the collision. Bullard's vehicle was insured by State Farm, and State Farm paid the plaintiff the policy limits. The plaintiff's wife owned her Maxima as separate property (she acquired it prior to the marriage), and the Maxima was insured by State Farm as well. State Farm paid Mr. Richard the $10,000 limit under the UM coverage of the Maxima policy. The plaintiff also had a separately-owned Nissan truck, which was owned by him prior to the marriage; the Nissan truck was also insured by State Farm. Thereafter, the plaintiff demanded payment from State Farm under the truck's UM

coverage. State Farm refused, contending the plaintiff could not stack

coverages under the policies covering both his wife's car and his truck. This

court affirmed the trial court's ruling granting summary judgment in favor of

State Farm, stating:

> Generally, the UM coverage of the occupied vehicle is the
> applicable coverage, and Section (c)(i) [of former La. R.S.
> 22:680(1), currently 22:1295(1)] establishes the general rule
> that the insured may not stack UM coverages even when the
> insured has UM coverage available to him under more than one
> policy. However, Section (c)(ii) provides an exception under
> certain circumstances for a person driving a vehicle not owned
> by himself or a resident spouse or relative. In that case, the law
> allows the insured to collect from his own UM policy in
> addition to collecting from the UM coverage of the car in which
> he was riding. Mr. Richard qualifies for the exception in all
> ways but one – it is undisputed that Mr. Richard was injured
> while he was driving a vehicle owned as separate property by
> his spouse with whom he lived.
>
> ***
>
> Had Mr. Richard been occupying a vehicle not owned by his
> spouse, he would have been entitled to the protection of his
> own UM coverage in addition to that covering the car in which
> he was riding. However, Mr. Richard was driving a vehicle
> owned by his resident spouse. The anti-stacking provision
> clearly does not allow Mr. Richard to recover under the UM
> section of his own policy because he has recovered under the
> UM section of the policy covering his wife's car.

*Id*. at 888-889.

In *Pitts v. Fitzgerald*, 01-0543 (La. App. 1 Cir. 5/10/02), 818 So. 2d

847, the plaintiff's wife and daughter suffered fatal injuries in an automobile

accident. The plaintiff collected UM coverage from the policy covering the

vehicle involved in the accident and later attempted to collect UM coverage

under a policy insuring another vehicle he owned. The First Circuit

concluded the anti-stacking statute precluded the plaintiff from recovering

under the UM provision of a policy on the vehicle involved in the accident

in question. The Court stated:

11

> The language of the anti-stacking statute limits the insured to recovery under only one policy, not allowing the insured to combine or stack coverages. The question of stacking only arises once it is determined that the person seeking to cumulate benefits on two or more uninsured motorist coverages is an "insured" under the terms of those policies. Plaintiff alleges in his petition that he is an insured under both the Allstate policy and the Progressive policy, and that both policies provide UM coverage. A person who is "insured" under the UM provisions of several different insurance policies may recover under one, and only one, of the policies.

*Id*. at 852-53 (internal citations omitted).

In *Campbell v. State Farm Ins. Co.*, 00-2218 (La. App. 4 Cir. 11/14/01), 804 So. 2d 112, the plaintiffs' three-year-old child was killed in a vehicular accident. The plaintiffs' automobile insurer paid the UM limits on the policy covering the vehicle involved in the accident. Thereafter, they sought to recover under a second UM policy issued to them on a vehicle owned by them but not involved in the accident. The court of appeal distinguished *Boullt*, *supra*, and concluded the plaintiffs were prohibited from stacking coverage on both State Farm policies. The court stated:

> The anti-stacking provision of La. R.S. 22:1406 prevent Mr. and Mrs. Campbell from recovering under their second UM policy. There is no jurisprudence suggesting otherwise.

*Id*. at 115.

In *Taylor v. Sider*, 97-1841 (La. App. 4 Cir. 4/29/98); 714 So. 2d 783, *writ denied*, 98-1769 (La.10/9/98), 726 So. 2d 406, the plaintiff and her adult daughter were involved an accident; the vehicle involved in the accident was owned by the daughter. The adult daughter resided with her parents at the time of the accident. State Farm insured the daughter's vehicle, as well as a vehicle owned by the mother's husband. After the accident, State Farm tendered the limits of the UM policy covering the daughter's vehicle.

However, the mother's injuries allegedly exceeded the amount tendered, and she filed a lawsuit to recover under the UM policy on a vehicle owned by her resident husband. The court of appeal affirmed the district court's ruling granting summary judgment in favor of State Farm, stating:

> Under the clear provisions of LSA-R.S. 22:1406(D)(1)(c)(i)[3] [currently 22:1295(1)(c)], while [the plaintiff] may have UM coverage available under two State Farm policies, one on [her daughter's] car and one on [her husband's] car, she may not "stack" them so as to receive UM coverage under both policies. William Shelby McKenzie and H. Alston Johnson, III, *Louisiana Civil Law Treatise Vol. 15: Insurance Law and Practice,* § 121 at 297 (2nd ed.1996). An exception to this general rule is contained in part c(ii) of the statute, wherein an injured passenger may seek UM coverage for injuries sustained while occupying an automobile *not owned* by the injured party, resident spouse, or resident relative. In adding this exception, the legislature intended to afford an insured, when riding with

---

[3] At that time, La. R.S. 22:1406(D)(1)(c), currently La. R.S. 22:1295(1)(c), provided:

> If the insured has *any* limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(1), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and *such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy;* provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following:
> (ii) With respect to bodily injury to an injured party *while occupying an automobile not owned by said injured party, resident spouse, or resident relative,* the following priorities of recovery under uninsured motorist coverage shall apply:
> (aa) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
> (bb) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.

(Emphasis added). Acts, 2008, No. 415, § 1 amended and reenacted Title 22 of the Louisiana Revised Statutes, the Louisiana Insurance Code. The provisions of Title 22, formerly comprising R.S. 22:1 to 22:331, were redesignated into a new format and numbering scheme comprised of R.S. 22:1 to 22:2371.

others, the protection of his own UM coverage, in addition to whatever coverage was available on the vehicle in which he was riding. McKenzie, *Uninsured Motorist Coverage-Stacking*, 42 La. L. Rev. 343, 344 (1982). However, in 1988, the Legislature amended the anti-stacking statute to provide that ***this exception is not limited only to vehicles not owned by the insured, but also to vehicles not owned by a resident spouse or any resident relative.*** *The amendment places all family members residing with the owner in the same position as the owner who is limited to one coverage.* McKenzie and Johnson, III, at § 122, page 299.

[The plaintiff] argues that [her daughter] should not be considered a "resident relative" because she was an adult rather than a minor child, and therefore the element of collusive control is [not] present. However, the restriction contained in part (c)(ii) does not include the word "minor," and by its clear language, includes any relative who is residing with the insured, regardless of age. The plain import of the statute cannot be ignored. Consequently, the exception to the anti-stacking statute is not applicable to the facts of the present case, and [the plaintiff] can recover under the UM coverage of only one policy.

*Id.* at 785-86 (Emphasis added).

Similarly, in *Nall v. State Farm Mut. Aut. Ins. Co.*, 01-1671 (La. App. 3 Cir. 12/11/02), 833 So. 2d 1080, the vehicle involved in the plaintiffs' automobile accident was owned by the driver's mother-in-law, and the driver's wife and mother-in-law were passengers. At the time of the accident, the driver, his wife, and his mother-in-law resided in the same household. The vehicle involved in the accident was insured by State Farm, and the driver owned a vehicle which was also insured by State Farm. Thereafter, State Farm, as the insurer of the vehicle involved in the accident, tendered the limits of its policy. The plaintiffs later sued State Farm as the UM insurer of the driver's vehicle. The trial court denied State Farm's motion for summary judgment, and the court of appeal reversed, stating:

Because the accident occurred while the [the driver and his wife] were occupying a vehicle owned by a resident relative,

14

[the mother/mother-in-law], they do not fall within the "anti-stacking" exception of paragraph (c)(ii) that would have allowed them to recover under one other UM policy in addition to the primary policy on the car involved in the accident. Hence, their recovery is governed by paragraph (c)(i), which provides that "such limits of uninsured motorist coverage *shall not be increased* when the insured has insurance available to him *under more than one uninsured motorist coverage provision or policy.*" By seeking to recover under both Ms. Coker's policy and their policy on the Town Car, the Nalls are clearly trying to increase the UM coverage available to them through the use of more than one policy, in contravention of the statute. The trial court erred in denying State Farm summary judgment on this issue.

*Id*. at 1082 (Emphasis added).[4]

---

[4] *See also Hardy v. Augustine*, 10-384 (La. App. 3 Cir. 2/2/11), 54 So. 3d 1246. In *Hardy*, the parents of a teenager who was killed in an automobile accident sought to recover under the tortfeasor's State Farm policy and under the UM provisions of two separate policies issued to them. The plaintiffs and State Farm filed cross-motions for summary judgment on the issue of whether the plaintiffs could recover under both policies. State Farm argued the anti-stacking statute, La. R.S. 22:1295(1)(c), barred plaintiffs from recovering under both UM policies issued to them. The trial court denied State Farm's motion and granted the plaintiffs' motion. The court of appeal reversed the trial court's denial of State Farm's motion for summary judgment. Distinguishing *Boullt*, *supra*, the court stated:

> *Boullt* does not stand for the proposition that divorced parents are entitled to stack policies. *Boullt* stands for the proposition that the anti-stacking statute is not applicable when separate legal persons have entered into separate contracts with an insurer to provide coverage that does not include the other contracting person as an "insured."
>
> In this case, the Hardys are married parents who are both "insureds" under both policies. Accordingly, they do not meet the conditions outlined in *Boullt* and are barred from recovering under their second policy by La. R.S. 22:1295(1)(c). The trial court erred as a matter of law in granting the motions for summary judgment in favor of Augustine and the Hardys and in denying State Farm's motion.

*Id*. at 1248-49.

In *Green v. Johnson*, 16-1525 (La. App. 1 Cir. 1/10/18), 241 So. 3d 1188, the decedent, who was riding a motorcycle, was struck and killed by an SUV. The motorcycle was co-owned by Benjamin Gibson and was insured by American Southern Home Insurance Company; the coverage included UM coverage. Gibson also had an automobile insurance policy issued by Allstate, which also included UM coverage. Allstate moved for summary judgment, arguing the motorcycle was insured under UM provisions under the American Southern policy; therefore, UM coverage under the policy with Allstate was excluded. The court of appeal affirmed the ruling granting Allstate's motion for summary judgment, stating:

In the instant case, plaintiff testified via deposition, she and her parents were living in the same home at the time of the accident. The colloquy was as follows:

[W]e do not find that the exclusion of UM coverage in the instant case violates public policy. Louisiana Revised Statute 22:1295(1)(c), known as the "anti-stacking" provision, limits an insured to recovery under only one policy and prohibits an insured from combining or stacking coverage, except when the insured is injured "while occupying an automobile *not owned* by said injured party, resident spouse or resident relative." A person who is insured under the UM provisions of several different insurance policies may recover under one, and only one, of the policies.

*Id*. at 94 (Internal citations omitted; emphasis in original).

In *Marcotte v. Progressive Sec. Ins. Co.*, 06-1368 (La. App. 4 Cir. 3/21/07), 955 So. 2d 708, the plaintiff was injured in a collision while riding his Vespa. He settled his claims with the at-fault driver and with Progressive Security Insurance Company ("Progressive"), under a policy of insurance providing UM coverage for the Vespa. Thereafter, the plaintiff filed a lawsuit against Progressive seeking recovery under an UM provision of a policy covering a BMW owned by him. The plaintiff contended he was issued two separate declarations pages for two separate vehicles; therefore, he should be allowed to recover under both. Progressive moved for summary judgment, arguing the plaintiff had already recovered under the UM provisions for the policy covering the Vespa, and allowing him to recover under the policy covering the BMW would violate Louisiana's anti-stacking statutes. The court concluded the plaintiff was prohibited from stacking UM coverage, stating:

The language of the statute focuses on the action of a single insured seeking to recover under more than one UM policy. This is clearly what Mr. Marcotte is attempting to do.
***
We agree with the trial court that Mr. Marcotte is prohibited from stacking UM/UIM coverage based on the record evidence. Further, we find that Mr. Marcotte's situation is not covered by the exception to the anti-stacking statute, and provides that stacking is permitted if: (1) the injured party is occupying an automobile not owned by him; (2) the UM coverage on the vehicle in which the injured party was an occupant is primary; **and** (3) the primary UM coverage is exhausted due to the extent of damages. In that instance, the other uninsured motorist coverage available to the injured occupant is considered as excess insurance, under which the injured occupant may recover. *Boullt v. State Farm Mut. Auto. Ins. Co.*, [*supra*]. All three conditions must be met for the exception to apply. Mr. Marcotte owned the vehicle on which he was injured; therefore, he cannot meet the first condition.

To reach the result desired by Mr. Marcotte, this Court would have to break every jurisprudential rule of contract interpretation. We decline to do so.

*Id*. at 711 (Emphasis in original).

Q: At the time of this motor vehicle accident May 6, 2017, who lived with you?

A: I guess my dad, John Slattery, Jr., and my mother, Lori Slattery.

\*\*\*

Q: Okay. At the time of the accident, John and Lori lived with you?

A: Yeah, we had – that [sic] had two houses. One in Shreveport and – when my mom worked during the week and then one in Spring Hill. So they were both houses essentially.

\*\*\*

This accident occurred while plaintiff was occupying a vehicle owned by her father, and plaintiff and her father were residents of the same household. Had plaintiff been occupying a vehicle not owned by her father, a resident relative, she would have been entitled to the protection provided by her own UM coverage, in addition to the policy covering the vehicle in which she was riding. More specifically, plaintiff would have had coverage under both policies if she had been injured "while occupying an automobile **not** owned by [her], resident spouse, or resident relative." However, plaintiff sustained injuries while occupying a vehicle owned by a resident relative, her father, and she received UM coverage under her father's Unitrin policy.

The provisions of La. R.S. 22:1295 are clear and unambiguous. Consequently, under the provisions of La. R.S. 22:1295(1)(c), plaintiff is prohibited from stacking the policies to increase the UM coverage available to her through the use of more than one policy. Accordingly, we find the trial court did not err in granting summary judgment in favor of GEICO.

17

**CONCLUSION**

For the reasons set forth herein, the district court's ruling granting summary judgment in favor of GEICO General Insurance Company, is affirmed. Costs of the appeal are assessed to plaintiff, Marguerite C. Slattery.

**AFFIRMED.**